177 P.3d 275

**PHOENIX NEW TIMES, L.L.C., and John Dougherty, Plaintiffs/Appellants,**

v.

**Joseph M. ARPAIO, Duly Elected Sheriff of Maricopa County; Maricopa County, a political subdivision of the State of Arizona, Defendants/Appellees.**

**No. 1 CA–CV 05–0768.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 5, 2008.

536

Munger Chadwick PLC By Michael J. Meehan, Tucson, and Steven P. Suskin, Phoenix, Attorneys for Plaintiffs/Appellants.

Iafrate & Associates, By Michele M. Iafrate, Christine A. Davis, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

SNOW, Judge.

¶1 Phoenix New Times, L.L.C., and John Dougherty (collectively "the New Times") appeal the superior court's decision denying the New Times an award of its attorneys' fees incurred in compelling Maricopa County Sheriff Joseph M. Arpaio and Maricopa County to produce documents pursuant to Arizona's public records law, Arizona Revised Statutes ("A.R.S.") sections 39–121 through 39–121.03 (2004).

¶2 Because, with one exception, we reverse the superior court's determination that the requested documents were "promptly furnish[ed]," we remand to the superior court for an exercise of its discretion in determining whether to award the New Times its attorneys' fees under the statute.

### FACTUAL AND PROCEDURAL HISTORY

¶3 Between May and September of 2004, a year in which Sheriff Arpaio was running for reelection, John Dougherty, then a reporter for the New Times, submitted a series of public records requests to the Maricopa County Sheriff's Office ("MCSO") pursuant to Arizona's public records law.

¶4 On September 23, 2004, still having received no documents, the New Times filed a statutory special action pursuant to A.R.S.

§ 39–121.02(A), in which it asked the superior court to order the Sheriff to provide access to all public records responsive to the New Times' earlier requests. The New Times, pursuant to A.R.S. § 39–121.02(B), also asked the superior court to award it the reasonable costs and attorneys' fees it incurred in obtaining access to the public records.

¶ 5 Between October 4 and October 14, 2004, before Arpaio filed his answer to the special action, MCSO provided the previously requested records within its possession to the New Times. Arpaio then responded to the New Times' complaint on October 15, 2004, and alleged that all documents that existed and were within MCSO's control had been provided.

¶ 6 As a result, the principal remaining issue before the court was not access to the documents, but rather was the New Times' request that, pursuant to A.R.S. § 39–121.02(B), MCSO pay the attorneys' fees the New Times incurred in obtaining the documents. The relevant version of the statute in place at the time specified:

> If the court determines that a person was wrongfully denied access to or the right to copy a public record and if the court finds that the custodian of such public record acted in bad faith, or in an arbitrary or capricious manner, the superior court may award to the petitioner legal costs, including reasonable attorney fees, as determined by the court.[ 1]

¶ 7 The superior court did not hold an evidentiary hearing on the issue of attorneys' fees. Rather, it elected to allow the parties to brief the issues. In that briefing, the parties submitted for the court's consideration, and entered into the record, the complete deposition transcripts of MCSO public information officers Lisa MacPherson and Lt. Paul Chagolla, and of a manager at an MCSO substation, Lt. Edmund Shepherd. A partial deposition transcript of MCSO financial manager Loretta Barkell was also entered into the record.

¶ 8 The court ruled, in relevant part, as follows:

> Petitioner alleges that the Defendant Sheriff has failed to timely disclose the public records requested by the Petitioners and that the Sheriff should be liable for costs and attorneys' fees. This Court rejects the Petitioners' claims as unsupported by anything other than argument and histrionics.
>
> The record clearly reflects that the Defendant Sheriff of Maricopa County, Joseph Arpaio, has produced for copying and inspection all public records requested, which are in existence. The Defendant has even gone so far as to assist in the preparation of records that did not previously exist and to provide members of the Sheriff's Office for deposition or interview to explain why certain data or records requested by the Petitioners does not exist or does not exist in the forms requested by the Petitioners. Despite such cooperation, Petitioners allege bad faith on the part of the Defendant. I find no bad faith.
>
> . . .
>
> Having determined that all records in existence previously requested by the Petitioners were disclosed, and that they were disclosed within a reasonable time and in a reasonable manner, I must deny the relief requested by the Petitioners.

The court denied both parties' requests for attorneys' fees, but awarded Arpaio all costs incurred in defending the action because he was the prevailing party.

¶ 9 The court entered final judgment on September 26, 2005, and the New Times timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

**ANALYSIS**

¶ 10 The New Times asks us to decide "whether the trial judge erred in denying [the] New Times' request for attorneys fees under the 'bad faith, arbitrary or capricious' standard of A.R.S. § 39–121.02(B)." As the

---

1. The statute now provides that attorneys' fees may be awarded if the person seeking public records substantially prevails. It is no longer necessary to demonstrate bad faith or arbitrary or capricious conduct on the part of the agency. A.R.S. § 39–121.02(B) (Supp.2006).

relevant statute indicates, however, for the New Times to be eligible for an award of attorneys' fees, MCSO must have both (1) wrongfully denied the New Times access to public records, and (2) acted in bad faith or in an arbitrary or capricious manner in doing so. A.R.S. § 39–121.02(B). We thus first address whether MCSO wrongfully denied the New Times access to public records.

## A. The Failure To "Promptly Furnish" Documents Constitutes A Wrongful Denial As A Matter of Law.

■ ¶ 11 Whether Arpaio wrongfully denied the New Times access to public records is a question of law, which we review de novo. *Cox Ariz. Publ'ns, Inc. v. Collins*, 175 Ariz. 11, 14, 852 P.2d 1194, 1198 (1993); *Bolm v. Custodian of Records of the Tucson Police Dep't*, 193 Ariz. 35, 38, ¶ 7, 969 P.2d 200, 203 (App.1998). A denial of access to public records is deemed wrongful if the person requesting the records was, in fact, entitled to them. *Cox*, 175 Ariz. at 14, 852 P.2d at 1198. It is undisputed in this case that the New Times was entitled to the records eventually provided after the statutory special action was filed. The trial court concluded that the MCSO did not wrongfully deny the requested documents to the New Times because it produced them, albeit after the New Times filed a special action seeking production. But, that the documents were eventually provided is not the end of the inquiry.

■ ¶ 12 Unlike public information statutes in some other jurisdictions, Arizona's statute specifies that when records are subject to disclosure the required response is the prompt and actual production of the documents. "Any person may request to examine or be furnished copies ... of any public record.... *The custodian of such records shall promptly furnish such copies, printouts or photographs* ...." A.R.S. § 39–

121.01(D)(1) (emphasis added); *see also Griffis v. Pinal County*, 215 Ariz. 1, 5, ¶ 13, 156 P.3d 418, 422 (2007) (holding that "[i]f a document falls within the scope of the public records statute, then the presumption favoring disclosure applies"). The statute further specifies that to the extent the party does not receive a prompt response, "[a]ccess to a public record is deemed denied." A.R.S. § 39–121.01(E).

¶ 13 Therefore, the issue is whether the MCSO failed to promptly produce the records for each request submitted by the New Times. If it did, then, pursuant to the requirements of the statute, it denied access to public records and the superior court had discretion to award attorneys' fees.

¶ 14 Although Arizona law requires that the documents be promptly furnished, it does not specify a specific number of days from the request by which time a public body must furnish the documents.[2] We have previously defined "prompt" in this context as being "quick to act" or producing the requested records "without delay." *West Valley View, Inc. v. Maricopa County Sheriff's Office*, 216 Ariz. 225, 230, ¶ 21, 165 P.3d 203, 208 (App. 2007) (quoting *Webster's New World Dictionary* 1137 (2d ed.1980) ). In West Valley, in which the request was for a "single category of documents that, by definition, [were] available for immediate production," we held that the statute required MCSO to produce the documents "at once." *Id.* We also observed, however, that whether a government agency's response to a wide variety of document requests was sufficiently prompt "will ultimately be dependent upon the facts and circumstances of each request." *Id.* n. 8.

■ ¶ 15 While we thus consider the facts and circumstances of each of the New Times' nine requests, we do so pursuant to the requirements of Arizona law. Arizona law places on MCSO the burden of establishing that its responses to the New Times' re-

---

2. Other states give their agencies from three to ten days to make the documents available. *See, e.g.,* Mo. Ann. Stat. § 610.023(3) (West 2007) ("[The] period for document production may exceed three [business] days [only] for reasonable cause."); N.H.Rev.Stat. Ann. § 91–A:4(IV) (West 2007) (stating that records must be made available within five business days of a request); N.J. Stat. Ann. § 47:1A–5(i) (West 2007) (stating that currently-available records must be furnished "not later than seven business days after receiving the request"); Mass. Gen. Laws Ann. ch. 66, § 10(b) (West 2007) ("A custodian of a public record shall, within ten days following receipt of a request for inspection or copy of a public record, comply with such request.").

quests were prompt given the circumstances surrounding each request. *See Cox,* 175 Ariz. at 14, 852 P.2d at 1198 (holding that the "burden fell squarely upon [the Maricopa County Attorney], as a public official, to overcome the legal presumption favoring disclosure."); *cf. Mitchell v. Superior Court,* 142 Ariz. 332, 335, 690 P.2d 51, 54 (1984) (holding that the burden of showing that a harm will result from disclosure "is on the party that seeks non-disclosure rather than on the party that seeks access"); *Elec. Privacy Info. Ctr. v. Dep't of Justice,* 416 F.Supp.2d 30, 40 n. 8 (D.D.C.2006) (placing the burden of proof on the government agency to show that it is acting "as soon as practicable" under the federal Freedom of Information Act's ("FOIA") expedited processing provision).[3]

 ¶ 16 Further, when public records are requested from an agency, the agency has the burden of establishing that it adequately searched for them:

> [A]n agency must make a good faith effort to conduct a search for the requested records.... At all times the burden is on the agency to establish the adequacy of its search. In discharging this burden, the agency may rely on affidavits or declarations that provide reasonable detail of the scope of the search.

*Rugiero v. U.S. Dep't of Justice,* 257 F.3d 534, 547 (6th Cir.2001) (citations omitted); *see also Goldgar v. Office of Admin., Executive Office of the President,* 26 F.3d 32, 34 (5th Cir.1994) ("It is the agency's burden to prove the non-existence of the records sought...."). In assessing the promptness of MCSO's response, we look to the time that the original request was made, and not to the time that the special action seeking access to the records was filed. The statute requires that the documents be furnished promptly in response to a *request* for public documents rather than in response to a special action to obtain the documents once access has allegedly been delayed or denied. *See* A.R.S. § 39–121.01(D)(1), (E).

¶ 17 The New Times argues that we need not consider whether MCSO's response to each of its individual records requests was prompt because, when considered as a whole, MCSO's failures to respond demonstrate a pattern of obstruction, and the superior court abused its discretion in finding otherwise. However, when the New Times consolidates nine separate records requests in its special action and argues that each of those requests was denied because MCSO's response to them was not sufficiently prompt, we cannot assess the promptness of the response without considering the circumstances surrounding each request.

### 1. Saban Request

 ¶ 18 On May 24, 2004, the New Times requested from MCSO "[a]ll police reports, DRs,[4] interviews, transcripts, photographs and any other recordings related to the MCSO investigation into allegations of sexual misconduct by Dan Saban [then running against Arpaio in the primary election], including all referrals of the case to outside agencies."

¶ 19 Although this information had been provided to TV channel 15 by MCSO in the preceding month, MCSO's Director of Media Relations, Lisa MacPherson, notified Dougherty on May 27, 2004, that MCSO would not reply to Dougherty's request because the investigation was "conflicted out" to the Pima County Sheriff's Office. She wrote Dougherty the following: "Reference your request regarding the investigation of Dan Saban, that investigation was conflicted out by Sheriff Arpaio to Pima County Sheriff Clarence Dupnik. Please contact that agency with any

---

**3.** When interpreting Arizona's public records statutes, it is appropriate to look to FOIA for guidance. *See, e.g., Salt River Pima–Maricopa Indian Cmty. v. Rogers,* 168 Ariz. 531, 540–41, 815 P.2d 900, 909–10 (1991) (citing *Church of Scientology v. City of Phoenix Police Dep't,* 122 Ariz. 338, 340, 594 P.2d 1034, 1036 (App.1979)); *Scottsdale Unified Sch. Dist. No. 48 of Maricopa County v. KPNX Broad. Co.,* 188 Ariz. 499, 503, 937 P.2d 689, 693 (App.1997), *vacated on other grounds by Scottsdale Unified Sch. Dist. No. 48 of Maricopa County v. KPNX Broad. Co.,* 191 Ariz. 297, 300–01, 955 P.2d 534, 537–38 (1998).

**4.** From the context, we presume this to have referred to department reports or other departmental records.

questions you have." MacPherson did not address whether MCSO had retained any documents relating to the investigation.

¶ 20 On October 14, 2004, after this lawsuit was filed, after the primary election for sheriff was over, and 143 days (one hundred working days) after the request was made, MCSO provided records relating to the Saban matter.

¶ 21 In her deposition on November 29, 2004, MacPherson testified as to what she did in response to the New Times' request and how she arrived at the conclusion that MCSO had no documents responsive thereto:

> I went to [another MCSO officer] Mr. MacIntyre. And I said, "Do we have any investigation on Dan Saban? Mr. Dougherty would like to see it."
>
> He said, "It's been sent to the Pima County's office. It's conflicted out to the Pima County Sheriff's Office."
>
> That's as far as the conversation went. So as far as I knew, they—we did not have the document; Pima County had it.

However, that was not as far as the investigation needed to go under the applicable law.

¶ 22 MCSO's burden under the public records law is to provide access to public records that are in its custody, *see* A.R.S. § 39–121, not merely to determine whether it is currently investigating the subject identified in the request. That MCSO transferred responsibility for the investigation to the Pima County Sheriff does not relieve MCSO from the burden of "promptly furnish[ing]" such investigative documents, or copies of those documents, as it may have maintained in its possession.

¶ 23 In this case, MCSO did not adequately seek to determine whether it had such documents. When other law enforcement agencies have not provided access to records concerning investigations in which they have participated, they have done so permissibly only because they have transferred all originals and copies of such documents to another public body and have identified the public body to which they transferred the responsive documents. For example, in *Cox* the Phoenix Police Department was unable to respond to a request for public records involving its investigation into some prominent Phoenix athletes, but it also specified that the department had transferred all of the original records "and all existing photocopies" to the County Attorney at his request. *See* 175 Ariz. at 13, 852 P.2d at 1196.

¶ 24 By contrast, MCSO did not inform the New Times that it had transferred all records "and all existing photocopies" of records regarding the Saban investigation to Sheriff Dupnik. It did not do so, at least in part, because once Officer MacPherson learned that the responsibility for the investigation had been transferred to Pima County, she did not seek to determine whether MCSO had maintained responsive documents. By failing to find out whether MCSO had retained any of the documents, she prevented MCSO from either establishing that it had conducted a sufficient search for the records or meeting its burden to establish that under the circumstances a response in 143 days was prompt. Moreover, MCSO did provide such records to a local television station in April 2004, well before it provided them to the New Times (which it did in October 2004, after this action had been filed). Thus, MCSO provides no factual basis for concluding that it did not have such records in May 2004 when the New Times' request was made.

¶ 25 By failing to provide any legally sufficient rationale for waiting 143 days to disclose the records, MCSO failed, as a matter of law, to meet its burden of establishing that it promptly responded to the New Times' request. *See Ariz. Commercial Mining Co. v. Iron Cap Copper Co.*, 29 Ariz. 23, 37, 239 P. 290, 294 (1925) ("[W]here no evidence is introduced in regard to an issue, or the evidence introduced is insufficient to support it, the finding thereon should be against the party having the burden of proof, and an omission of the findings to cover a particular fact or issue is to be deemed a finding on that fact or issue against the party having the burden of proof."). Therefore, MCSO is deemed to have wrongfully denied the New Times access to the documents, *see* A.R.S. § 39–121.01(E), and the superior court erred in determining otherwise.

### 2. Driving Hawk Request

¶ 26 On May 26, 2004, the New Times requested "[t]he personnel file for Sgt. Leo Driving Hawk from the date he was hired by the MCSO through May 26, 2004." MCSO acknowledges that it had the documents at the time the request was made and that the New Times was entitled to them. MacPherson testified that when she got this request, however, she "didn't read it very carefully." She was apparently aware that Sgt. Driving Hawk had a father of the same name who was engaged in litigation in the federal court, and she testified that she read the request to be for federal court documents regarding that case. She further testified that she did not respond to the request in any way until October 14, 2004, because she was angry with the New Times and did not want to communicate with Dougherty. She explicitly testified:

Q. So because you were angry because you didn't like what [Dougherty] published, you didn't respond to the [Driving Hawk] request for 142 days; correct?

A. I didn't really want to communicate with him during that period of time.

Q. So the answer to my question is that's correct?

A. Yes.

Q. That's why you didn't respond; is that right?

A. Yes.

On October 14, 2004 (after the lawsuit was filed), MCSO produced the records for the New Times. That production was 141 days, or ninety-eight working days, after the request had been made.

¶ 27 MCSO offers no evidence suggesting that, under the circumstances, it "promptly furnish[ed]" Sgt. Driving Hawk's personnel file when it provided the file 141 days after the request was made. Even

accepting MacPherson's testimony that she interpreted a request for Sgt. Leo Driving Hawk's MCSO employment records as a request for his father's federal court records, that testimony only offers an explanation for the delay; it does not establish that MCSO's response was prompt. Any such excuse is more properly aimed at the issue of whether a failure to furnish records was in bad faith, arbitrary, or capricious, and not at whether the disclosure was prompt. If mere inattention by the employee of a public body could meet that body's burden of establishing that it promptly provided documents, and thus that a request was not wrongfully delayed or denied, it would turn on its head the core purpose of the public records law, which is to "to allow the public access to official records and other government information so that the public may monitor the performance of government officials and their employees," *See Phoenix Newspapers, Inc. v. Keegan,* 201 Ariz. 344, 351, ¶ 33, 35 P.3d 105, 112 (App. 2001). If public entities could be excused from providing public records merely by being inattentive to requests, then access to the records would be easily frustrated. Thus, evidence of inattentiveness on the part of the public body does not establish the promptness of a response. *See State v. Williams,* 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993) (noting that when construing statutes, a court's goal is to "fulfill the intent of the legislature that wrote it").

¶ 28 By offering no legally sufficient reason why 141 days should be considered "prompt" disclosure of documents that were clearly requested and immediately available, MCSO failed, as a matter of law, to meet its burden of establishing that it did not wrongfully deny the New Times' document request, and the superior court erred in determining otherwise.[5]

---

5. To the extent that a custodian's mistake might inform the promptness of the disclosure (and thus the wrongfulness of the denial), we agree with courts interpreting FOIA that the denial would not be wrongful only if the custodian made reasonable efforts and acted in good faith. *See, e.g., Ill. Inst. for Continuing Legal Educ. v. U.S. Dep't of Labor,* 545 F.Supp. 1229, 1237 (N.D.Ill.1982) (holding, in a case where there was no assertion that the custodian was lying or

that she was negligent, that a custodian did not improperly withhold a book that was mislaid and stating that "[n]o 'improper withholding' within the meaning of the FOIA occurs when an agency fails to locate documents within the ten day time limit ... *if the agency has made reasonable efforts to locate the documents and if its failure to do so has been in good faith.*") (Emphasis added.). Custodial inattentiveness is, by definition, not a "reasonable effort."

### 3. Fish Pond Request

¶ 29 On June 18, 2004, the New Times requested:

> [a]ll records related to a proposal to build a fish pond in or near the tent city complex including all records related to requests for proposals, contracts for the design and construction of the pond, contracts to provide fish for the pond and all permits from the county and state health departments related to the construction of such a facility.[6]

MCSO produced the records on October 4, 2004, 108 days (seventy-five working days) after the request was made.

¶ 30 When counsel for the New Times asked MacPherson at her deposition if the reason she gathered the fish pond documents was in response to the lawsuit rather than in response to the request, she replied as follows:

> A. I don't know if—I wouldn't say that. I—I assembled all that information and got it over to him before I assembled it.
>
> There was a lot of information because there were a variety of different bids and so forth that we were putting together.
>
> . . .
>
> Q. . . . And why, again, did it take you over three months to forward 11 pages of material to Mr. Dougherty?
>
> A. Well, I would go to the Custody people, and they would go to their—a variety of their people to get all the documents for—reference the fish pond together.
>
> And it took some time. I mean, he's not—he's not the only reporter that we end up having to do work for.

Although MacPherson testified that the reason for the delay was that assembly of the eleven pages "took some time," she could not remember when she first asked that the documents be assembled or when she received the assembled documents. In the 108 days it took to fill the request, she only remembers making three phone calls to two people in an effort to get the request filled.

¶ 31 Although a request for voluminous documents that are not all located in the same place might justify some delay in responding to a document request, *cf. Cleaver v. Kelley,* 415 F.Supp. 174, 175–76 (D.D.C. 1976) (holding that the failure of two government agencies to process a disclosure request within the time provisions of the FOIA was not in effect a denial of the request because those agencies were faced with an unpredictable backlog of requests that were being processed in chronological order), similar delays have been upheld only with some form of prompt notification or response, as is required by A.R.S. § 39–121.01(D)(1) and (E). *Cf. Chourre v. I.R.S.,* 203 F.Supp.2d 1196, 1200–02 (W.D.Wash.2002) (holding that the IRS did not improperly withhold records when it provided responsive documents just over five months after the request was made, but gave four intervening notices stating that the IRS needed more time).

¶ 32 Here, MCSO failed to put forth sufficient facts to meet its burden that such circumstances presented themselves. Although the request was made on June 18, MacPherson could not remember when she first began attempting to assemble the documents or when she received them. She could not remember whether attempts to respond were triggered by the lawsuit which was filed more than three months later. She only testified to three phone calls to two different people over the course of three and one-half months in an effort to get the request filled. MCSO never informed the New Times of the status of its request or of any efforts to fulfill it during the 108 days it took to respond to the New Times' request. Under these circumstances, there is insufficient evidence, as a matter of law, to meet MCSO's burden that it provided the documents promptly pursuant to statutory requirements. The trial court thus erred in concluding that MCSO did not wrongfully deny these documents to the New Times.

---

**6.** The New Times amended the portion of this request dealing with permits on June 25, 2004. The changed portion includes "all permits from the county and state related to the construction of such a facility. This includes, but is not limited to, county and state health departments, the state Department of Game & Fish and the state Department of Environmental Quality."

### 4. Vending Machine and Canteen Requests

¶ 33 On June 18, 2004, the New Times requested:

All records related to the current contract between the sheriff's office and the entity that provides vending machine services to the county jails including tent city.

This includes, but is not limited to, all requests for proposals, copies of all contracts, correspondence, written and electronic, between the sheriff's office and the vending company.

On June 28, 2004, the New Times further requested:

1. All requests for proposals and contracts between MCSO and all public, private or nonprofit entities that are involved in any way in the operation of the MCSO canteen from January 1, 1993 through June 28, 2004.

2. The general ledger for the MCSO canteen from January 1, 2004 through June 28, 2004. This includes, but is not limited to, all written records documenting the purchases of goods for the canteen, the resale of goods to inmates and detainees, the collection of funds from the sale of goods and the disposition of the funds.

3. All internal MCSO correspondence, written and electronic, concerning the operation, sales, collection and disposition of funds generated by the MCSO canteen from January 1, 2000 through June 28, 2004.

Although the requests were received on June 18 and June 28, there is no evidence that MCSO did anything with respect to these requests before the lawsuit was filed, except to tell Dougherty to get the records from Materials Management, which MacPherson testified had "the original copies of the contracts." MacPherson admitted at her deposition that she did not investigate whether MCSO had public records responsive to the vending machine requests and that she was not sure whether the records were in MCSO custody. After the lawsuit was filed, many boxes of records were produced from MCSO that were responsive to these requests.[7]

¶ 34 As mentioned above with respect to the Saban request, because the plain language of the public records law requires that MCSO produce public records in its custody, it must produce such records even if they might also be obtained from another source. The public body may indicate to those requesting such documents that the records sought may be obtained more efficiently and less expensively from another source, but this does not remove from the public body the obligation to provide access or copies of the records that it has if the requesting party does not withdraw its request.

¶ 35 MCSO had documents responsive to these requests to which the New Times was entitled, yet none of them were produced until October 14, 2004, more than one hundred days (eighty-two working days) after the requests were made. Because MCSO presents no evidence suggesting why it took such a lengthy amount of time to provide these documents, we find, as a matter of law, that it did not meet its burden of establishing a prompt response and thus that the New Times was wrongfully denied access to these records. The court therefore erred in concluding otherwise.

### 5. Inmate Death Request

¶ 36 On July 9, 2004, the New Times requested "[a]ll incident reports related to an alleged death of an inmate or pretrial detainee on or about July 9, 2004 at the Durango facility." MacPherson testified that when she received Dougherty's request, she promptly inquired of the Chief of Custody and was told that no death had occurred that day. She further testified that she relayed this information to Dougherty by voicemail the same day. There was no testimony that Dougherty ever withdrew the request. According to MacPherson, it was not until a few days later that she learned an inmate death had in fact occurred on July 9, 2004, but she nonetheless failed to correct the misinformation.

---

7. For instance, the general ledger of the canteen was not made available for copying until October 14, 2004.

¶ 37 MacPherson offered a variety of explanations for not informing the New Times of the mistake. She testified that she did not inform Dougherty upon learning of the error because she thought it was sufficient that she had told him that there was no death:

A. I was told that there was no death. I told [Dougherty], and I figured that was the end of it.

Q. Even though you learned a few days later that there was a death?

A. Even though I learned different.

She also testified that MCSO made no records regarding the death at the jail until three months after it occurred, but then testified that she "honestly [did not] know what paperwork was available" between the death on July 9 and the release of the records on October 14 because she did not look. Finally, in her affidavit filed May 17, 2005, MacPherson stated that she failed to inform Dougherty because she assumed he would not be interested in it, as she was told that it had been a natural death.

 ¶ 38 None of these explanations meet MCSO's burden of establishing that records furnished ninety-seven days (sixty-seven working days) after a request was made were furnished promptly. First, after an agency learns that it erroneously responded to a records request, the agency may not justify its failure to provide records by claiming that it no longer has any responsibility to provide them. *Cf. Rogers v. Superior Court*, 19 Cal.App.4th 469, 23 Cal. Rptr.2d 412, 419–20 (1993) (holding, for the purposes of the California Public Records Act, that a city disclosed all documents in a reasonably timely manner when records that had not been in the city's possession or could not be found were promptly disclosed when they were found or became available).[8] Second, an agency may not justify its failure to provide records by claiming that it assumed that the person requesting the records would no longer be interested in them under certain circumstances, at least without asking the person making the request, for it is well-established that the requestor's need, good

faith, or purpose is entirely irrelevant to the disclosure of public records. *See Bolm*, 193 Ariz. at 39, ¶ 10, 969 P.2d at 204. Finally, MCSO did not establish that no records were made concerning the inmate death until shortly before the records were provided to the New Times on October 14. An agency may not wait to provide records already available until a final report is produced. *Cox*, 175 Ariz. at 14, 852 P.2d at 1198 ("reports of ongoing police investigations are not generally exempt from our public records law"). Thus, as a matter of law, none of MacPherson's explanations support a judicial finding that MCSO "promptly furnish[ed]" these records when it did not produce them until ninety-seven days after they were requested. The trial court therefore erred in concluding that the New Times was not wrongfully denied these records.

### 6. Overton Request

 ¶ 39 The New Times submitted a request for the payroll records of "Deputy Don Overton" on July 9, 2004. MCSO had an employee by that name, but he was not a deputy. MacPherson testified that she informed Dougherty by voicemail on July 9, 2004, that MCSO had no deputy named "Don Overton." She testified also that while she had ascertained there was no deputy by that name, she had not inquired whether MCSO had a non-deputy employee by that name.

¶ 40 We find that the trial court did not err in determining that the New Times was not wrongfully denied access to public records in this instance. The response was prompt because it was made on the same day as the request by the New Times. The response was accurate because the New Times submitted a specific request that MCSO answered with equal specificity. MCSO had no reason to know that the New Times wanted the payroll records of a non-deputy when the New Times requested the records of a deputy. Thus, the trial court did not err in concluding that these records were not wrongfully denied.

---

**8.** When interpreting Arizona's public records statutes, it is appropriate to look to the California Public Records Act for guidance. *See Salt River,*

168 Ariz. at 537, 815 P.2d at 906; *Ariz. Bd. of Regents v. Phoenix Newspapers,* 167 Ariz. 254, 257, 806 P.2d 348, 351 (1991).

### 7. Cyan Court Request

¶ 41 On July 29, 2004, Dougherty requested the following records pursuant to the Arizona public records law:

1. All sheriff's office reports related to the arrest of Gabriel Golden and Eric Kush on or about July 23, 2004.

2. All booking information related to the arrest of Mr. Golden and Mr. Kush on or about July 23, 2004.

3. All sheriff's office reports related to the tactical actions taken during an incident at 16843 S. Cyan Court in which an armored vehicle was deployed and struck a private passenger vehicle and multiple tear gas canisters were fired into the residence which eventually was engulfed in fire.

4. All reports related to the death of a pet dog that resulted from the fire at 16843 S. Cyan Court.

In a second e-mail the same day, Dougherty added to this list "[a] copy of a video made by a private citizen and given to MCSO related to tactical assault and use of tear gas shot into a home at 16843 S. Cyan Court on or about July 23, 2004."

¶ 42 Lt. Chagolla responded on July 30, 2004, with an e-mail informing Dougherty that he would be in touch with Dougherty about these requests when the investigation was complete. Dougherty responded with an e-mail pointing out that the arrest and booking records should already be available, but MCSO never responded any further to this request until after the lawsuit was filed.

¶ 43 As noted with respect to the inmate death request, an agency may not wait to release requested records dealing with an incident until it has completed a final report or other similar document regarding that incident. *See Cox*, 175 Ariz. at 14, 852 P.2d at 1198 ("reports of ongoing police investigations are not generally exempt from our public records law"). Dougherty specifically asked for the arrest and booking records associated with the two suspects who had been apprehended shortly before the request was made in July 2004. As Lt. Chagolla's deposition evidences, those records were available when the New Times requested them. In addition, MCSO already had the videotape on the day the New Times requested a copy of it, yet neither the videotape nor any other records of any type were released until after this lawsuit was filed. Lt. Chagolla acknowledged that he made no effort to furnish any of the requested records in the interim.

¶ 44 MCSO has provided no evidence of circumstances that would establish that records not furnished until seventy-seven days (fifty-three working days) after the request was made were nevertheless furnished "promptly." There being no justification offered for the period it took to respond, we find, as a matter of law, that the New Times was wrongfully denied access to public records responsive to the Cyan Court request, and the trial court therefore erred.

### 8. Westerner Motel Request

¶ 45 On August 26, 2004, Dougherty sent Lt. Chagolla an e-mail requesting "[t]he department report stemming from a SWAT arrest on or about August 18 in Wickenburg at the Westerner Motel...." The subject line on the e-mail was "public records request." At his deposition, Lt. Chagolla testified that the e-mail had been in his inbox since August 26, 2004, but that he did not notice it until he looked for it after the lawsuit was filed a month later. MCSO does not assert that it was inappropriate for the New Times to direct its requests for MCSO records to Lt. Chagolla, nor does it assert that it was inappropriate for the New Times to transmit the public records request by e-mail. As discussed above in conjunction with the Driving Hawk request, such inattention by the employee of a public body does not meet that body's burden of establishing that it promptly provided documents that were clearly requested and readily available. We cannot find that a document furnished forty-nine days (thirty-four working days) after it was requested was furnished "promptly" when the only reason for the delay was lack of diligence on the agency's part. Because MCSO has not met its burden of establishing that it promptly responded to this request, we find that the New Times was wrongfully denied access to documents responsive thereto and thus that the trial court erred.

### 9. Mesa Jail Request

¶ 46 On September 20, 2004, Dougherty requested "all booking reports and department records related to any inmate serving jail sentences at [the Mesa jail] from January 1, 2000 through September 20, 2004." On September 21, 2004, Lt. Chagolla e-mailed Dougherty stating "[i]n our booking processes there is not a method to separate the booking records of inmates booked into the southeast facility, into the category that you have noted. As well, there is not a process to capture the inmate assignments you have requested." In his efforts to locate records responsive to Dougherty's request, Lt. Chagolla had inquired about booking records but not about any other departmental records related to inmates serving jail sentences at the Mesa jail, as requested by Dougherty. He testified as follows:

A. I asked [Lt. Shepherd] if we had any booking records regarding anybody booked into [the] Southeast facility.

Q. But Mr. Dougherty asked you for more than booking records; didn't he?

. . .

Q. Booking reports and department records. Isn't that what [the request] says?

A. I didn't ask him that question.

Q. Any particular reason why?

A. I didn't ask him the question.

Q. Any particular reason why?

A. No.

There is no evidence in the record that MCSO did not have the records sought by the New Times. When the court granted the New Times' motion asking that MCSO produce for deposition "[t]he most knowledgeable party regarding the East Mesa jail facility records," MCSO responded that "[r]egarding the person most knowledgeable about the east Mesa jail facility, Ed Shepherd is the person most knowledgeable and the person whose deposition you have already taken." There is an obvious disconnect between the designation requested by the New Times and the response provided by MCSO. While we presume that Ed Shepherd is the person most knowledgeable about the East Mesa jail facility, his own deposition indicates that he is not the person most knowledgeable about East Mesa jail facility *records,* which was the designation requested by the New Times.

¶ 47 After testifying that all records for detainees that are housed in the East Mesa jail facility are computerized, and no hard copies of the records are maintained, Shepherd testified that he didn't have direct access to the computer and didn't know whether certain types of information could be obtained from it:

Q. If you want to know on any given day what individuals are in the East Mesa Jail Facility, is it possible for you to find that out from the computer?

[Attorney for MCSO]: Form.

The witness: Not me. I don't have access.

By [Attorney for the New Times]:

Q. To the computer?

A. Right.

. . .

Q. There's no way to determine who is in the District One jail on any given day, unless you know the name ahead of time?

A. Well, you're asking me a question that I can only answer by saying I have no idea how to get it out of there.

Q. Who knows?

A. I don't have the capabilities or the knowledge of getting any information out of that machine at all.

. . .

Q. Who would be the person within the Sheriff's Office that would be the most knowledgeable about whether there is the ability either through the computer or other—some other system to have a list of who is at the East Jail Facility on any given day?

Who would be the person who would have the knowledge?

A. You know, I know a lot of people that work down in the computer center, but I don't know who would have the most knowledge. And I don't know who would be responsible for figuring that one out. . . .

Q. Who's the individual that's in overall charge of the records system for the Sheriff now?

A. For the—well, it's kind of a multi-faceted operation. There's a records manager.

And then we have a completely different IT group. They don't manage the records; they house the records.

Q. Who's the records manager?

A. Renee Brannon.

. . .

Q. And who is the supervisor or manager of the IT group?

A. Shelley Bunn.

¶ 48 As discussed with respect to the Saban request, the burden is on the government to prove the nonexistence of requested records. MCSO has not met that burden. MCSO was supposed to produce for deposition the person most knowledgeable about the records of the East Mesa jail facility, and MCSO claimed that Lt. Shepherd was that person. By his own admission, he was not. We therefore find that MCSO did not carry its burden of proving that the requested records do not exist. Because MCSO neither furnished records responsive to this request nor established that it did not have any, the trial court erred in concluding that the New Times was not wrongfully denied access to these records.

¶ 49 In sum, we find that MCSO wrongfully denied the New Times access to public records under A.R.S. § 39–121.01(D)(1) with respect to all of the requests except the Overton request, and thus that the New Times satisfied the first prong of the attorneys' fees provision. That leaves for resolution the question whether any of the denials was in bad faith, arbitrary or capricious.

**B. Whether Any Of The Denials Was In Bad Faith, Arbitrary or Capricious.**

¶ 50 It is the superior court's province to determine whether a public entity acted in bad faith or in an arbitrary or capricious manner in denying documents. *KPNX–TV v. Superior Court In and For County of Yuma*, 183 Ariz. 589, 594, 905 P.2d 598, 603 (App.1995) ("The trial court has discretion to decide whether a custodian of records acted in bad faith, arbitrarily or capriciously. The trial court's determination on this issue will be upheld unless it is clearly erroneous.") (Citation omitted.). In this case, however, the superior court found that MCSO did not wrongfully deny the New Times the documents. It thus had no need in considering the New Times' attorneys' fee request to further analyze whether any of those denials was in bad faith, arbitrary, or capricious.

¶ 51 While in the context of determining that MCSO did not deny documents to the New Times, the superior court also observed that the denial was not in bad faith, it made no determination whether the denial was arbitrary or capricious. *See, e.g., Cox*, 175 Ariz. at 14–15, 852 P.2d at 1198–99 (finding that attorneys' fees were appropriately awarded under the statute because while Collins' conduct was not in bad faith, it was arbitrary or capricious). Further, as it pertains to the superior court's observation that MCSO's denial was neither wrongful nor in bad faith, we have now clarified the standard for what constitutes a wrongful denial of documents, and have further determined that, in light of that standard, MCSO's delay in providing the New Times with the requested documents constituted a wrongful denial. Because we give no deference to a superior court's findings of fact that are "induced by a mistaken view of the law," *Ariz. Minority Coalition for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*, 211 Ariz. 337, 344, ¶ 12, 121 P.3d 843, 850 (App.2005), we also vacate the superior court's observation that the denial was not in bad faith so that upon remand the superior court can make that determination applying the correct legal standard.

¶ 52 On remand, the superior court should determine whether MCSO's wrongful denial of public records was in bad faith or was arbitrary or capricious, and whether, under the circumstances, the New Times is entitled to an award of its attorneys' fees pursuant to the statute.

## CONCLUSION

¶ 53 For the reasons stated above, we vacate the superior court's denial of attorneys' fees to the New Times and its award of costs to MCSO. We remand to the superior court for a further determination on the issue of attorneys' fees. The New Times has requested its costs and attorneys' fees on appeal. Should the New Times prevail on remand the superior court is authorized to consider the fees incurred by the New Times during this appeal in making a fee award. We award New Times its costs on appeal upon timely compliance with ARCAP 21.

CONCURRING: DANIEL A. BARKER and DONN KESSLER, Judges.

