IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TIMOTHY MCKEE, a single man, *Appellee*,

*v.*

PEORIA UNIFIED SCHOOL DISTRICT, a political subdivision of the
state, *Appellant*.

No. 1 CA-CV 13-0374
FILED 12-02-2014

Appeal from the Superior Court in Maricopa County
No. CV2010-096000
The Honorable Karen A. Mullins, Judge

**REVERSED**

COUNSEL

Lewis Roca Rothgerber, LLP, Phoenix
By Mary Ellen Simonson, Kimberly A. Demarchi

DeConcini McDonald Yetwin & Lacy, PC, Tucson
By Denise M. Bainton
*Co-Counsel for Appellant*

Law Offices of William R. Hobson, Chandler
By William R. Hobson

Law Offices of Kevin Koelbel, PC, Chandler
By Kevin Koelbel
*Co-Counsel for Appellee*

Arizona Attorney General's Office, Phoenix
By Paula S. Bickett
*Counsel for Amicus Curiae State of Arizona*

By Christopher P. Thomas, Phoenix
*Counsel for Amicus Curiae Arizona School Boards Association*

Holm Wright Hyde & Hays, PLC
By Matthew W. Wright, David K. Pauole
*Counsel for Amicus Curiae Arizona School Risk Retention Trust, Inc.*

Sims Murray, Ltd.
By William J. Sims, III, Kristin M. Mackin
*Counsel for Amicus Curiae Arizona Municipal Risk Retention Pool*

---

**OPINION**

Judge Kent E. Cattani delivered the opinion of the Court, in which Presiding Judge Jon W. Thompson and Judge Donn Kessler joined.

---

**C A T T A N I**, Judge:

¶1 Peoria Unified School District appeals the superior court's judgment in which the court found that the District failed to promptly respond to Timothy McKee's public records request. The District also challenges the court's ruling awarding McKee $67,500 in attorney's fees. For reasons that follow, we conclude that the superior court improperly assessed the "promptness" of the District's response as it related to the production of individual documents, rather than in the context of the District's overall response to a multi-pronged request for documents. Accordingly, we reverse the judgment and vacate the fee award.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 McKee was a physical education teacher at a District high school. In May 2010, a student drowned during a swimming class while under McKee's supervision. The District conducted an internal investigation, which ultimately led to the District seeking to terminate McKee's employment. The details of the drowning and the District's subsequent termination of McKee's employment are set forth more fully in our recent decision upholding the termination. *See Peoria Unified Sch. Dist.*

*v. McClennen*, 1 CA-SA 13-0263, 2014 WL 4473640, at *1–2, ¶¶ 2–10 (Ariz. App. Sept. 11, 2014) (mem. decision).

¶3         On August 24, 2010, after the District began to move forward with employment termination proceedings, McKee filed a public records request with the District seeking the following information and documents related to the drowning, the District's investigation, and the termination process:

- The name of the attorney who will be representing the District at the [termination] hearing, including the agendas and minutes of board meetings at which the attorney was contracted and a copy of the contract.

- The name of the District's investigator and any reports, notes, statements, documents, interviews, recordings and names of witnesses that are part of the investigation.

- The names and contact information for all of the students who were at the pool on May 12, 2010 at the time of the incident whether in Mr. McKee's or [another teacher's] class.

- The name and contact information for every staff person and teacher at Ironwood High School.

- Any recording and/or minutes of the August 20, 2010 Board meeting [at which the school board adopted a statement of charges for McKee's dismissal], including the discussion in executive session regarding items 2(A) and 2(D) on the agenda.

- An electronic copy of [District Superintendent] Mr. Santorelli's letter dated August 16, 2010, which was hand-delivered to Mr. McKee on August 17, 2010 including all Meta data.

¶4         Upon receipt of the records request, the District's human resources director, Tahlya Visintainer, who was also the District's custodian of records, began the process of responding. Visintainer initially gathered readily-available documents, such as the District's investigative file that she herself had created and had stored in her office. She also contacted the school board and several other departments to ask for documents

responsive to McKee's request, including the business department for records relating to the retention of counsel, and the IT department for the electronic copy of the superintendent's letter. In addition to gathering responsive documents, Visintainer coordinated review/redaction of confidential or otherwise protected information from the documents.

¶5　　　　On September 3, eight business days after submitting the records request, McKee contacted the District by letter stating that he had not yet received a response and, "[b]ecause of the short timelines involved" for the administrative termination proceedings, renewed his request for "immediate production" of the public records materials.[1] On September 9, eleven business days after the request, McKee filed suit against the District in superior court alleging, among other claims, that the District had violated public records law by failing to respond to his request.

¶6　　　　On that same date, the District sent McKee a letter detailing in part the status of his request, including the anticipated finalization and approval of the August 20, 2010 Board minutes, the availability (by September 13) of a recording of the public Board meeting, and the District's position that the names and contact information of students present at the drowning were not subject to production as a public record because of confidentiality concerns. On September 13, the District provided McKee with the audio recording of the August 20 Board meeting. And on September 16, the District produced over 150 pages of the investigative file and records relating to the retention of counsel.

¶7　　　　McKee contacted the District on September 30 with concerns that the investigative file provided on September 16 did not contain the notes of all witness interviews. Although Visintainer thought the full investigative file had been stored in a single location in her credenza (the source for the portion produced on September 16), she searched her office and found additional interview notes on a note pad in a desk drawer. The District scanned and sent these additional notes to McKee on October 1, and sent a corrected version on October 2.

¶8　　　　Later that day, McKee again contacted the District to ask about three witnesses for whom interview notes had not been provided. Visintainer searched her office again and found the notes of her interviews with the three additional witnesses on a separate note pad on her desk. She

---

[1]　　　McKee's employment termination hearing was scheduled to begin on October 4, 2010.

scanned the remaining notes and, through counsel, provided them to McKee on October 3, 24 business days after the records request. McKee's 3-day employment termination hearing began as scheduled on October 4.[2]

¶9        Over one year into the public records lawsuit, McKee made a discovery request for production of "[t]he Log provided by 'the school administration' to the Glendale Police Department and referenced by Officer McMillan" in the police report attached to the statement of charges in the administrative proceeding. The District advised McKee that it did not have such a document.

¶10       Before trial, McKee withdrew his claims as to three of the six categories of documents requested, leaving at issue only the District's investigative file, the names and contact information of students present at the drowning, and a record of the executive session portion of the August 20 Board meeting. At the two-day bench trial, Visintainer testified that she had assumed all interview notes were in the main file in her credenza, that she produced the missing notes immediately upon becoming aware that they were missing, and that her failure to produce the complete file in the initial September 16 production was an unintentional mistake. Visintainer also testified that McKee's discovery request for the student "log" was the first time she had heard of this document, and school administrators suggested to her that the document might be "a handwritten sheet of paper that had been passed around to the kids that had gone to a certain classroom and written their names and contact information down and then handed [] over to the police department that day."

¶11       The superior court ruled that the District's response to the request for the investigative file was not sufficiently prompt, and that the District should have, at a minimum, advised McKee that it had provided the student contact log to the police. The court ruled against McKee regarding his request for the District Board executive session minutes. The court then found that McKee had substantially prevailed on his public records claim and awarded him $67,500 in attorney's fees. *See* Ariz. Rev.

---

[2]       At the conclusion of the hearing, the hearing officer recommended against terminating McKee's employment, but the District Board subsequently rejected that recommendation.

Stat. ("A.R.S.") § 39-121.02(B) (authorizing award of attorney's fees to individual who "substantially prevailed" in public records suit).[3]

¶12        The District timely appealed.[4]  We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶13        Arizona law requires that public records be open to inspection by any person.  *See* A.R.S. § 39-121.  The public records law "open[s] agency action to the light of public scrutiny" and ensures that citizens are "informed about what their government is up to." *Scottsdale Unified Sch. Dist. No. 48 v. KPNX Broad. Co.*, 191 Ariz. 297, 302–03, ¶ 21, 955 P.2d 534, 539–40 (1998) (citations omitted).  "Access to a public record is deemed denied if a custodian fails to promptly respond to a request for production of a public record . . . ."  A.R.S. § 39-121.01(E).

¶14        The District argues the superior court erred by (1) concluding that the District violated the public records law because of its delay in responding to McKee's request for the investigative file and by failing to inform McKee that it had provided the student contact log to the police, and (2) awarding McKee his attorney's fees.  We review the court's decision that McKee was wrongfully denied access to the District's records de novo as an issue of law, although we defer to the court's factual findings unless clearly erroneous.  *See Judicial Watch, Inc. v. City of Phoenix*, 228 Ariz. 393, 395, ¶ 8, 267 P.3d 1185, 1187 (App. 2011).[5]

---

[3]        Absent material revisions after the relevant date, we cite a statute's current version.

[4]        McKee argues this court lacks jurisdiction to hear the appeal on the basis that the District did not timely file its notice of appeal.  Before the case came at issue, McKee moved to dismiss the appeal on this same ground.  A different panel of this court denied the motion; we decline to revisit this jurisdictional issue.

[5]        In his answering brief, McKee advances several arguments seeking affirmative relief from the superior court's rulings.  He argues that the court erred by determining that the minutes of the school board's executive session were not subject to production, by awarding only a portion of the attorney's fees he requested, and by dismissing his request for declaratory

## I.    Investigative File.

¶15    Upon request, a custodian of records must "promptly" furnish copies of requested records, unless the records are accessible on the entity's website.  A.R.S. § 39-121.01(D)(1).  The public records statutes do not specify a fixed timeframe in which production of documents is required.  *See id.*; *W. Valley View, Inc. v. Maricopa Cnty. Sheriff's Office*, 216 Ariz. 225, 230, ¶ 21, 165 P.3d 203, 208 (App. 2007).  Nor does case law specify a fixed timeframe.  Instead, "prompt" has been defined for these purposes as "being 'quick to act' or producing the requested records 'without delay.'" *Phx. New Times, L.L.C. v. Arpaio*, 217 Ariz. 533, 538, ¶ 14, 177 P.3d 275, 280 (App. 2008) (citation omitted).  Promptness is assessed within the context of the particular facts and circumstances surrounding each request.  *Id.*

¶16    The superior court found that even the District's initial September 16 production of the bulk of the investigative file—16 business days after McKee's request—was not sufficiently prompt.  The court reasoned that "[t]he file was already in existence in the office of [Visintainer] . . . . who created the file, had possession and control of the file, was personally aware that it was available for production, and had personal knowledge of its contents."  The court also found that Visintainer failed to conduct a reasonable search for the complete investigative file, which led to the subsequent production of missing interview notes (the absence of which the court suggested "should have been obvious to the District") 24 business days after the initial records request.

¶17    The superior court analogized the disclosure in this case to that at issue in *Arpaio*, in which this court held that the Maricopa County Sheriff's Office improperly refused to produce documents.  After a newspaper requested five categories of documents relating to a specific incident and arrest, the Sheriff's Office indicated that it would respond only when the investigation was complete, even though several of the documents requested were already available for production.  217 Ariz. at 545, ¶ 41, 43, 177 P.3d at 287.  The *Arpaio* court concluded that, because "reports of ongoing police investigations are not generally exempt from our public records law," the Sheriff's Office should not have refused to produce

---

relief under the open meeting law.  Because McKee did not cross-appeal from the superior court's judgment, however, these arguments are not properly before us, and we decline to address them.  *See* ARCAP 13(B)(3) ("The appellate court may direct that the judgment be modified to enlarge the rights of the appellee or to lessen the rights of the appellant only if the appellee has cross-appealed seeking such relief.").

existing documents just because the investigation was not yet final. 217 Ariz. at 545, ¶ 43, 177 P.3d at 287 (quoting *Cox Ariz. Publ'ns, Inc. v. Collins*, 175 Ariz. 11, 14, 852 P.2d 1194, 1198 (1993); *see also id.* at 544, ¶ 38, 177 P.3d at 286 ("An agency may not wait to provide records already available until a final report is produced.").

**¶18**        In contrast to the *Arpaio* case, here, the District did not rely on the fact of an ongoing investigation to delay production of any records. In fact, the District's investigation was complete before McKee filed his public records request, and the District's intended process was to compile the already-existing records to produce a comprehensive response to all six categories of McKee's request.

**¶19**        In concluding that the District failed to timely provide readily available documents to McKee, the superior court incorrectly assessed the promptness of production of the investigative file in isolation, rather than in the context of McKee's request for six categories of documents. The fact that one document may be easily accessed does not necessarily create an obligation to immediately turn over the document without waiting to compile other requested documents and without allowing time for review and redaction. Nothing in the statutes or in *Arpaio* requires that a public entity produce each individual responsive document (or category of documents) immediately, as long as the response as a whole is provided "promptly." *See* A.R.S. § 39-121.01(D)(1).

**¶20**        Here, the record is clear—when considered in the context of a comprehensive response to McKee's request for six distinct categories of documents, some to be gathered from different departments, and all of which were subject to review and possible redaction of confidential information prior to production—that the District acted reasonably and promptly in its efforts to respond to McKee's request. By beginning a rolling response to McKee's public records request just 16 business days after receiving it, and by completing the disclosure of relevant documents within 24 business days, the District acted promptly. *Cf.* 5 U.S.C. § 552(a)(6)(A)(i) (setting 20-business-day deadline for federal agency to make an initial determination whether to comply with a request for documents under the Freedom of Information Act).

**¶21**        Finally, although the District mistakenly omitted portions of the file in its initial disclosures, the District immediately corrected the mistake when McKee's counsel asked about missing documents. Thus, even accepting the superior court's conclusion that the District could have found the documents sooner, we conclude that McKee has not established

bad faith on the part of the District, and the quickly-corrected mistake does not undermine the overall reasonableness/promptness of the District's response. *See Arpaio*, 217 Ariz. at 541 n.5, ¶ 28, 177 P.3d at 283 n.5 (stating that, if custodian acted in good faith and made reasonable efforts, mistake would not establish a wrongful denial of access to public records). We therefore reverse the superior court's ruling that the District failed to promptly provide McKee a copy of the investigative file.

## II.     Student Contact Information and Log.

**¶22**      Public records are those "reasonably necessary or appropriate to maintain an accurate knowledge of [a public entity or officer's] official activities and of any of their activities which are supported by monies from this state or any political subdivision of this state." A.R.S. § 39-121.01(B). The Arizona Supreme Court has described three alternative categories of public records:

> A public record is [1] one "made by a public officer in pursuance of a duty, the immediate purpose of which is to disseminate information to the public, or to serve as a memorial of official transactions for public reference"; [2] a record that is "required to be kept, or necessary to be kept in the discharge of a duty imposed by law or directed by law to serve as a memorial and evidence of something written, said or done"; or [3] any "written record of transactions of a public officer in his office, which is a convenient and appropriate method of discharging his duties, and is kept by him as such, whether required by . . . law or not."

*Griffis v. Pinal Cnty.*, 215 Ariz. 1, 4, ¶ 9, 156 P.3d 418, 421 (2007) (quoting *Salt River Pima-Maricopa Indian Cmty. v. Rogers*, 168 Ariz. 531, 538–39, 815 P.2d 900, 907–08 (1991)). Not all records created or kept by a public entity qualify as public records; instead, the "nature and purpose of the document determine its status," and only those documents having a "substantial nexus" to the entity's activities meet this content-driven test. *Phx. Newspapers, Inc. v. Ellis*, 215 Ariz. 268, 272, ¶ 16, 159 P.3d 578, 582 (App. 2007) (quoting *Griffis*, 215 Ariz. at 4, ¶ 10, 156 P.3d at 421).

**¶23**      The law creates a strong presumption in favor of disclosure of public records. *Griffis*, 215 Ariz. at 5, ¶ 12, 156 P.3d at 422. This presumption may be overcome, however, where "privacy, confidentiality, or the best interests of the state outweigh the policy in favor of disclosure." *Id*. at ¶ 13.

¶24            The superior court found that the District had created the handwritten log of students present for the drowning and that, "[b]ecause there was no evidence that the District retained a copy of the log, its obligations under the public records statute would have been satisfied by informing McKee that the log was in the custody of the Glendale Police Department." The court found that, because the District did not do so until over one year after the records request, the District had denied McKee access to the requested record.

¶25            Preliminarily, the superior court improperly found that the log was *the District's* record rather than a police record. In making that finding, the court relied on Glendale Police Detective McMillan's report, in which the detective stated that "I was advised that the school personnel w[ere] passing out a log and having each child write their personal information down." But Det. McMillan testified that (contrary to the superior court's interpretation of his report) he did not know who had prepared the list or, more generally, where the list had come from. Similarly, other officers' reports do not mention participation by school personnel, noting only that "[a] list was sent around the class for the students to put down names, addresses and phone numbers" or that "[t]he list was on notebook paper completed by each student putting down their information."

¶26            Additionally, Det. McMillan acknowledged that the log was created "for the purpose of providing this to the police" and that it "was used for the police investigation." Even assuming school personnel assisted with or facilitated creation of the log, "the nature and purpose of the document determine its status." *See Griffis*, 215 Ariz. at 4, ¶ 11, 156 P.3d at 421. Because this testimony tying the log to a police purpose was the only evidence presented on the matter, the record thus compels the conclusion that the log was not a District record. *See id.* at 4, ¶ 9, 156 P.3d at 421 (tying definition of public record to production of the record as part of the public entity's public duty).

¶27            Finally, the court's finding that the District should have advised McKee that the log had been given to the Glendale Police Department ignores the fact that McKee was already aware that the police had the log before he requested the contact information from the District. In fact, McKee obtained a copy of the log, albeit a redacted copy, directly from the Glendale Police Department prior to his employment termination hearing. His request to the District for a (presumably unredacted) copy of the document he successfully obtained elsewhere highlights McKee's conflation of the public's right to public records and his litigation-based

discovery needs. McKee's discovery dispute regarding redaction of the log (and access to an unredacted copy) should have been addressed through his employment termination litigation with the District and was unrelated to whether the District (in responding to a public records request) should have told him something he already knew—that the Glendale Police Department had the requested document. *See London v. Broderick*, 206 Ariz. 490, 495, ¶ 18, 80 P.3d 769, 774 (2003) (noting that the relevant consideration for a public records request is "the public's interest in disclosure," not someone's "personal interests as an individual litigant"); *see also Scottsdale Unified Sch. Dist. No. 48*, 191 Ariz. at 302–03, ¶ 21, 955 P.2d at 539–40 (public records laws protect the public's interest in transparency in government).

**¶28** Because public records law only requires production of "[p]ublic records and other matters in the custody of any officer" (not the records of a different entity), A.R.S. § 39-121, and because the court erred by conflating McKee's personal litigation needs with disclosure required under Arizona's public records law, we reverse the court's ruling that the District violated public records law in its response to McKee's request for student contact information.

## III. Attorney's Fees.

**¶29** The superior court found that McKee had substantially prevailed against the District and awarded him $67,500 in attorney's fees. *See* A.R.S. § 39-121.02(B) (authorizing discretionary award of attorney's fees to requesting party who substantially prevails in public records litigation). Because we have reversed both facets of the public records claim on which McKee prevailed, we vacate the award of attorney's fees.

**¶30** McKee also seeks an award of attorney's fees on appeal under A.R.S. § 39-121.02(B). McKee has not substantially prevailed on appeal, and we accordingly deny his request for fees.

## CONCLUSION

¶31     For the foregoing reasons, we reverse the superior court's ruling and vacate the award of attorneys' fees.



Ruth A. Willingham · Clerk of the Court
FILED: gsh