IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

BEAU HODAI,
*Plaintiff/Appellant,*

*v.*

THE CITY OF TUCSON, A MUNICIPAL CORPORATION; AND THE TUCSON
POLICE DEPARTMENT, A MUNICIPAL AGENCY,
*Defendants/Appellees.*

No. 2 CA-CV 2015-0018
Filed January 7, 2016

---

Appeal from the Superior Court in Pima County
No. C20141225
The Honorable D. Douglas Metcalf, Judge

**REVERSED, IN PART, AND REMANDED**

---

COUNSEL

ACLU Foundation of Arizona, Phoenix
By Daniel J. Pochoda and Darrell Hill
*Counsel for Plaintiff/Appellant*

Michael G. Rankin, Tucson City Attorney, Tucson
By Dennis P. McLaughlin and Michael W. L. McCrory
*Counsel for Defendants/Appellees*

**OPINION**

Presiding Judge Miller authored the opinion of the Court, in which Chief Judge Eckerstrom and Judge Espinosa concurred.

M I L L E R, Presiding Judge:

**¶1**  In this appeal from a superior court special action to compel disclosure of public records withheld by the City of Tucson,[1] we address whether the best interests of the state support the court's decision denying all relief. In concluding that disclosure of some redacted records does not harm the government or its people, we reverse in part and direct the court to address ancillary matters on remand.

**Facts and Procedural Background**

**¶2**  In October 2013, Hodai requested TPD public records related to cell phone tracking equipment called "Stingray." The city describes Stingray as a surveillance technology device[2] that could "assist in abduction/kidnapping investigations," but was used in

---

[1]The records request was made to the City of Tucson and its police department (TPD), which we jointly refer to as the city unless the context requires differentiation.

[2]The parties refer to "Stingray" and "Stingray II." For the purposes of this appeal, there is no difference between the versions. Generally, this type of device is known as a cell site simulator, which mimics a cell tower so that responding cell phones provide to it data typically used for the functioning of the cellular network and individual phone administration. Brian L. Owsley, *Triggerfish, Stingrays, and Fourth Amendment Fishing Expeditions*, 66 Hastings L.J. 183, 191-92 (2014). Interception of such information has been used in criminal investigations for a number of years. *Id.*

only a few criminal investigations before the city discontinued its use.[3]

**¶3**　　　　The records request specified: (1) TPD records and "work product" using or related to Stingray; (2) communications about the purchase, use, and maintenance of Stingray equipment; and, (3) all communications with Stingray's manufacturer, Harris Corporation. Hodai identified the equipment as having been purchased by the city several years earlier with a specific federal grant. TPD initially provided four redacted documents in response. The twenty pages consisted of contract information and an email exchange concerning redactions requested by Harris. No information regarding Stingray's use or cases in which it was employed was disclosed. Hodai filed two additional related records requests in November and December, but no further documents were produced. Hodai included in each records request that the city inform him if records were withheld and the reasons for the non-disclosure. *See* A.R.S. § 39-121.01(D)(2). The complaint alleged a TPD sergeant informed him after his second request that it would be too time-consuming to locate search warrants and other responsive documents.

**¶4**　　　　In March 2014, Hodai filed a statutory special action requesting an order directing the city to provide responsive records and awarding Hodai attorney fees and costs. The city filed an answer in which it generally denied it had failed to comply with the public records law. It also averred that in "its efforts to prepare for this lawsuit," it found TPD training materials, an operational manual, and forms for Stingray use. It declined, however, to disclose these materials based on a review by the Federal Bureau of Investigation (FBI) that opined disclosure would not be in the best interests of the state. The city did, however, offer them for the trial court's in camera review. Additionally, it stated it was aware of four

---

[3]The city's answering brief indicated that the device had left its possession, but at oral argument and in a notice of errata counsel clarified that the city had stopped using the device around the time of the litigation, but retains it pending resolution of other issues.

closed and one open criminal investigations in which Stingray had been used. It also offered for in camera inspection the "full case files" of the completed investigations. Finally, the city attached two affidavits to its answer: (1) an FBI agent's explanation of how law enforcement uses Stingray and the detrimental effect if technical information about it were released; and, (2) a TPD lieutenant's testimony about the responsive documents, as well as TPD's use and maintenance of Stingray.

¶5　　　　The city subsequently filed several hundred pages under seal accompanied by a motion requesting the trial court inspect documents in camera. The documents included law enforcement training materials, a form used for officers to request Stingray monitoring, a "data dump" of raw data received from the equipment during an investigation, and five police reports from ongoing and closed criminal cases. The city did not wait for a court ruling to disclose the closed case reports, however; the records were produced soon after Hodai requested them by their specific case numbers. At oral argument on the motion to inspect, the court ordered the city to provide a list of documents withheld and reasons why, additionally ordering the parties to file briefs. The court also concluded at the hearing that the records of the ongoing case should be withheld because the investigation was sensitive and "release of records from that would jeopardize" it.

¶6　　　　After briefing by the parties, but without further hearings, the trial court concluded in an unsigned ruling that all documents produced in camera were properly withheld and it denied all other requests for documents. Hodai appealed and we suspended jurisdiction for the trial court to enter a final judgment. *See* Ariz. R. Civ. App. P. 3(b), 9(c). The court having done so, we have jurisdiction over the appeal pursuant to A.R.S. §§ 12-2101(A)(1) and 12-120.21. *See* Ariz. R. P. Spec. Actions 8(a).

## Discussion

¶7　　　　Arizona's public records law mandates "[public records] shall be open to inspection by any person at all times during office hours." A.R.S. § 39-121. A person need not demonstrate a particular purpose to justify disclosure. *Bolm v.*

*Custodian of Records of Tucson Police Dep't*, 193 Ariz. 35, ¶ 10, 969 P.2d 200, 204 (App. 1998) ("A person's right to public records under [§ 39-121] is not conditioned on his or her showing, or a court finding, that the documents are relevant to anything."). The fact that the public record exists is sufficient to create a presumption requiring disclosure. *See Griffis v. Pinal Cty.*, 215 Ariz. 1, ¶ 8, 156 P.3d 418, 421 (2007). Nonetheless, a public officer may refuse release or inspection of a public record if such disclosure "might lead to substantial and irreparable private or public harm." *Carlson v. Pima Cty.*, 141 Ariz. 487, 491, 687 P.2d 1242, 1246 (1984). Discretionary refusal to disclose based on the best interests of the state is subject to judicial scrutiny. *Id.* "Th[e] 'best interests of the state' standard is not confined to the narrow interest of either the official who holds the records or the agency he or she serves. It includes the overall interests of the government and the people." *Phx. Newspapers, Inc. v. Keegan*, 201 Ariz. 344, ¶ 18, 35 P.3d 105, 109-10 (App. 2001). The government has the burden of specifically demonstrating how production of documents would be detrimental to the best interests of the state. *Cox Ariz. Publ'ns, Inc. v. Collins*, 175 Ariz. 11, 14, 852 P.2d 1194, 1198 (1993).

**¶8** Upon a determination that the documents at issue are clearly public records within the meaning of the statute, the court determines whether the government's proffered explanation of public harm outweighs the policy in favor of disclosure. *Carlson*, 141 Ariz. at 491, 687 P.2d at 1246; *Judicial Watch, Inc. v. City of Phx.*, 228 Ariz. 393, ¶¶ 10, 17-18, 267 P.3d 1185, 1187, 1189 (App. 2011). The parties do not dispute, and we agree, that the Stingray documents are public records. Additionally, the trial court appropriately undertook the balancing test pursuant to *Carlson*. We defer to the trial court's factual findings unless clearly erroneous, but review de novo whether its denial of access was improper. *Keegan*, 201 Ariz. 344, ¶ 11, 35 P.3d at 108-09. We are not bound by the trial court's findings if clearly erroneous. *City of Tucson v. Morgan*, 13 Ariz. App. 193, 195, 475 P.2d 285, 287 (1970).

**Quick Reference Sheets and Training Materials**

**¶9** Hodai argues the trial court erred by finding the city properly withheld three "quick reference" sheets, an equipment

authorization form, and a PowerPoint presentation. Hodai articulated several reasons in the form of questions to support disclosure: (1) whether TPD officers sought warrants before using the technology, (2) whether use of the technology forces all cell phones in the area to register their identity and location, (3) whether data belonging to third parties is protected, and (4) whether the government is candid with the courts about the capabilities of the technology. The trial court recognized these rationales to be "legitimate and important public purposes," but irrelevant in this context because all of the records simply showed how to use the equipment.

¶10 To support its argument that nondisclosure of the training materials served the best interests of the state, the city relied on the affidavit of a special agent with the FBI. The agent stated that disclosure of information about cell site simulators would "provide adversaries with critical information about the capabilities, limitations, and circumstances of their use . . . [and] provide them the information necessary to develop defensive technology, modify their behaviors, and otherwise take countermeasures designed to thwart the use of this technology."[4] He also stated that even minor details "may reveal more information than their apparent insignificance suggests because, much like a jigsaw puzzle, each detail may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself." Hodai provided no evidence to the trial court to dispute the validity of the FBI affidavit, which authorized the trial court to accept the factual statements as uncontested. *Cf. GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 5, 795 P.2d 827, 831 (App. 1990) (in summary judgment context, opposing party's failure to provide

---

[4]The agent also noted the FBI considered information about the equipment exempt from the federal Freedom of Information Act, citing 5 U.S.C. § 552(b)(7)(E). That subparagraph, which prevents disclosure of law enforcement techniques or procedures, has no equivalent in Arizona's public records law. *See* A.R.S. §§ 39-121 through 39-121.03.

competent evidence controverting moving party's affidavits, facts alleged may be considered true).

¶11 Because neither Hodai nor his attorney had access to documents submitted under seal, he could not address the trial court's conclusion that the public records only "show how to use the equipment." He instead argues, as he did below, that the injury detailed by the FBI agent was speculative and not specific. Further, he argues the agent's testimony did not outweigh the presumption favoring disclosure, citing *Star Publishing Co. v. Pima County Attorney's Office*, 181 Ariz. 432, 434, 891 P.2d 899, 901 (App. 1994). But in *Star Publishing*, the county attorney had not reviewed the documents in question and refused to produce them because they "might be protected" by privilege, might be immune from disclosure, or might impede a pending criminal investigation. *Id.* at 433-34, 891 P.2d at 900-01.

¶12 In contrast, the potential injury here is sufficiently specific. An FBI agent experienced with the technology stated that knowledge of how the equipment works "could easily lead to development and employment of countermeasures." That a person experienced with the technology believes it could be "easily" thwarted if the information was released is not merely a possible harm based on a hypothetical situation, but one rooted in experience. *See Ariz. Bd. of Regents v. Phx. Newspapers, Inc.*, 167 Ariz. 254, 258, 806 P.2d 348, 352 (1991) (evidence that in "some cases" publicity regarding university presidency candidates resulted in "lesser qualified, but thicker skinned" candidates satisfied best interests of state exception).

¶13 Hodai also argues the agent's affidavit was speculative because it did not address each item being withheld, again relying on *Star Publishing*. There, however, no one had reviewed the records. 181 Ariz. at 434, 891 P.2d at 901. Here, the city stated in its answer that the FBI had reviewed the documents. And even if the FBI agent who drafted the affidavit did not review all the documents himself, he averred that information about how the specific technology at issue here worked should not be released and provided reasons. The city withheld documents to which those statements applied. *Star Publishing* does not require the factual

justification and review of documents to occur in a single step. Therefore, for documents that provide information regarding how the equipment works, we conclude the trial court could properly find the best interests of the state outweigh the presumption that disclosure is required.

**¶14** Next, we must determine whether the documents viewed in camera meet this requirement. The quick reference sheets and the authorization form contain details about how the equipment works as well as how to operate it. The PowerPoint presentation, however, contains general information as well as some technical details about the equipment. It also provides guidance to law enforcement about how use of the equipment fits within the broader context of the rules of criminal procedure, such as obtaining a search warrant. Thus, the trial court's conclusion that all information in the training documents "show[s] how to use the equipment" was clearly erroneous. *See Merryweather v. Pendleton*, 91 Ariz. 334, 338, 372 P.2d 335, 338 (1962) (finding is clearly erroneous where "'reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed'"), *quoting United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, ¶ 11, 213 P.3d 197, 200-01 (App. 2009) (finding of fact clearly erroneous if unsupported by such substantial evidence as would allow "'a reasonable person to reach the trial court's result'"), *quoting Davis v. Zlatos*, 211 Ariz. 519, ¶ 18, 123 P.3d 1156, 1161 (App. 2005); *cf. Morgan*, 13 Ariz. App. at 195, 475 P.2d at 287 (finding supported by "no evidence" clearly erroneous).

**¶15** The trial court's broad finding prevented it from addressing Hodai's alternative argument that responsive documents containing both sensitive and non-sensitive information must be redacted and released. *Phx. Newspapers, Inc. v. Ellis*, 215 Ariz. 268, ¶¶ 22-23, 159 P.3d 578, 583-84 (App. 2007) (noting portions of document may be released if confidential information redacted). The ruling did not address the possibility of redacting documents to protect the interest of the state. Moreover, apparently unbeknownst to Hodai, the city provided for in camera inspection a version of the

PowerPoint with proposed redactions.[5]  In our review of the records submitted under seal, we conclude that the city's proposed redactions removed information about how Stingray works in particular instances while disclosing other important information, such as its use in the justice system.  The unredacted information addresses the specific public policy rationales that the court found legitimate and important, but does not compromise the ability of the government to keep secret the technical information about Stingray.  Therefore, we reverse the trial court's ruling withholding the training PowerPoint and remand so the court may order disclosure of the city's redacted version of the PowerPoint.

**Hodai's Additional Arguments Regarding Training Materials**

**¶16**        Hodai raises three more arguments with regard to the information sheets and training materials.  First, he contends the trial court erred when it found as an alternative basis to withhold documents that they "are subject to a qualified privilege to not disclose sensitive law enforcement investigative techniques."  The court relied on *United States v. Van Horn*, 789 F.2d 1492, 1507-08 (11th Cir. 1986), a criminal disclosure case regarding the government's refusal to reveal the location and type of listening devices.  The court determined the government had a qualified privilege not to disclose information that would allow criminals to thwart surveillance technology.  *See id.*  The privilege was an extension of the state's privilege to withhold the identity of confidential informants to promote effective law enforcement, subject to the right of a defendant to present a full defense.  *See Roviaro v. United States*, 353 U.S. 53, 59 (1957); *accord* Ariz. R. Crim. P. 15.4(b)(2) (disclosure of informant information not required under specified conditions).

**¶17**        This qualified investigative technique privilege has been recognized by other federal courts, *e.g.*, *United States v. Cintolo*, 818 F.2d 980, 1002 & n.13 (1st Cir. 1987), but it has not been adopted in Arizona.  Generally, the privilege has been applied in criminal

_____

[5]The city's description of the documents filed did not mention these redactions, nor did any of its arguments before the court.

cases to protect the public interest in effective law enforcement by safeguarding information that if revealed would threaten the future value of a surveillance technique. *See Van Horn*, 789 F.2d at 1507-08; *United States v. Rigmaiden*, 844 F. Supp. 2d 982, 987 (D. Ariz. 2012). It requires the court to balance the needs of the government with the rights of the defendant. *See Van Horn*, 789 F.2d at 1508; *Rigmaiden*, 844 F. Supp. 2d at 988-89. This balancing is the functional equivalent of the "best interests of the state" analysis required when the government asks the court to preclude disclosure of public records to protect the state's interest in effective law enforcement. *Griffis*, 215 Ariz. 1, ¶ 13, 156 P.3d at 422. Because the balancing test in the privilege parallels the best-interests analysis already conducted, we need not consider whether such a privilege exists in Arizona or should be applied in the context of a public records request.

**¶18** Hodai also argues the trial court should have allowed his counsel to view the documents under seal, and that the information about how the surveillance technology works is already publicly known, and therefore is not protected.[6] Neither of these arguments was preserved below, and we do not consider them for the first time on appeal. *See Harris v. Cochise Health Sys.*, 215 Ariz. 344, ¶ 17, 160 P.3d 223, 228 (App. 2007).

---

[6]Hodai is correct that some technical information regarding the Stingray is already public. *See, e.g.*, Owsley, *supra*, at 191-94; Stephanie K. Pell & Christopher Soghoian, *Your Secret Stingray's No Secret Anymore: The Vanishing Government Monopoly Over Cell Phone Surveillance and Its Impact on National Security and Consumer Privacy*, 28 Harv. J.L. & Tech. 1, 8-13 (2014). However, Hodai did not raise this argument nor introduce any facts below to support it; moreover, public availability of a record does mean disclosure is automatically required. *See Scottsdale Unified Sch. Dist. No. 48 of Maricopa Cty. v. KPNX Broad. Co.*, 191 Ariz. 297, ¶¶ 3-7, 10-12, 955 P.2d 534, 536-38 (1998) (availability of teacher birth dates from other sources did not require disclosure by school district).

**Open Case Report and Data Dump Exemplar**

¶19 Hodai contends the trial court erred by withholding the report from an open TPD investigation and an exemplar of a "data dump" from the use of the equipment during the investigation. As with the training documents, the city argued to the trial court that these documents should not be released due to the best interests of the state. The city does not directly respond to Hodai's arguments on appeal.

¶20 "[R]eports of ongoing police investigations are not generally exempt from our public records law." *Collins*, 175 Ariz. at 14, 852 P.2d at 1198. Therefore, the burden was on the city to show the release of all or part of the file would be detrimental to the best interests of the state. *Id.* As above, this required a showing of specific, material harm. *Ellis*, 215 Ariz. 268, ¶ 22, 159 P.3d at 583.

¶21 The city relied on the affidavit of TPD Lieutenant Hall, who stated that, in his "opinion and belief . . . the release of any information about this case, including the case name, would be detrimental to and would interfere with the further investigation of that case." The trial court found that the ongoing investigation was "sensitive" and that "any release of records from that would jeopardize the investigation."[7] Hodai does not contest the veracity of Hall's affidavit and the averments within it are not unusual; therefore, the court's findings are not clearly erroneous. Moreover, unlike in *Collins*, the harm here is specific—even providing the name or minor details of the investigation would link it to the use of the equipment, revealing a sensitive investigative technique in an ongoing case. *Cf.* 175 Ariz. at 14, 852 P.2d at 1198 (vague assertions of possible harm insufficient to overcome legal presumption favoring disclosure).

---

[7]Hodai contends the trial court failed to apply the *Carlson* test regarding the open investigation, but the context of the court's ruling indicates it used the correct test.

**¶22** Similarly, although the city argued the data dump exemplar should be withheld because it is unintelligible without technical viewing software and has "no independent evidentiary value," we agree with the trial court's conclusion that the data is sensitive. Even in its raw form, many lines of output contain date and address information that can be linked to details of the ongoing investigation. The trial court did not err by withholding the data dump exemplar because in this context, release of any details of the open case would result in specific, material harm.

**Redactions in Original Production**

**¶23** Hodai contends the trial court erred by allowing the city to redact the "names of private business partners" involved in equipment purchases. Hodai did not raise this argument before the trial court. We do not consider an argument not adequately preserved below. *Harris*, 215 Ariz. 344, ¶ 17, 160 P.3d at 228.

**FBI-Related Documents**

**¶24** Hodai argues the trial court erred by not ordering the city to furnish "any and all records of communications (i.e., email, email attachments, faxes, memos, letters) (generated from January 1, 2013 to December 9, 2013) in the possession of any TPD personnel that pertain in any way to the Federal Bureau of Investigation (FBI)." Hodai generally contends we should reject the court's findings that his search request was overly broad and burdensome.

**¶25** The trial court, relying on out-of-state authority[8] such as *Capitol Information Association v. Ann Arbor Police*, 360 N.W.2d 262,

---

[8]Hodai also argues that the trial court's reliance on out-of-state cases was improper. Although he is correct that Arizona courts are not bound by precedent from other states, *see State v. Solis*, 236 Ariz. 242, ¶ 14, 338 P.3d 982, 987 (App. 2014), our courts may look to cases from other jurisdictions as persuasive authority. S*ee, e.g., Baseline Fin. Servs. v. Madison*, 229 Ariz. 543, ¶ 13, 278 P.3d 321, 323 (App. 2012). Any error by the trial court in discussing out-of-state cases despite the presence of on-point Arizona authority was harmless,

263-64 (Mich. Ct. App. 1984), and *Bader v. Bove*, 710 N.Y.S.2d 379, 379 (N.Y. App. Div. 2000), found that Hodai had failed to identify the records sought with reasonable specificity, and thus denied the request as improper. The court observed that Hodai's request for all FBI-related communications would require the city "to search every record in its possession" that included relevant keywords. The court also found that "[t]he [c]ity has asked Plaintiff to narrow his requests but he has refused."

¶26 Hodai characterizes the trial court's ruling as denying his request simply because it was broad and argues that Arizona law "rejects attempts to automatically limit the public's ability to inspect and copy public records based on volume," citing *Star Publishing*, 181 Ariz. at 434, 891 P.2d at 901. He also relies on *Congress Elementary School District No. 17 of Yavapai County v. Warren*, 227 Ariz. 16, ¶¶ 12, 14, 251 P.3d 395, 398 (App. 2011), for the proposition that a records request may not be denied simply because compliance would impose a significant administrative burden on the agency. "'Burden' is not a recognized exception to the Arizona public records laws," he maintains.

¶27 Our public records statutes "evince a clear policy favoring disclosure," *Carlson*, 141 Ariz. at 490, 687 P.2d at 1245, and the burden of proving that "redaction would be so unduly burdensome . . . that inspection is not warranted" rests with the party opposing inspection, *Judicial Watch*, 228 Ariz. 393, ¶ 17, 267 P.3d at 1189. To the extent Hodai maintains that unreasonable administrative burden can never be a sufficient reason to deny a public records request under Arizona law, he is mistaken. As our supreme court has recognized, "sometimes the benefits of public disclosure must yield to the burden imposed on . . . the government itself by disclosure." *London v. Broderick*, 206 Ariz. 490, ¶ 9, 80 P.3d 769, 772 (2003); *accord Judicial Watch*, 228 Ariz. 393, ¶ 17, 267 P.3d at 1189 ("the burden of producing public records can outweigh the public's interest in inspecting those records"); *Arpaio v. Davis*, 221

_____

because the out-of-state cases cited provide the same rule as the Arizona precedents, as discussed below.

Ariz. 116, ¶¶ 21-22, 210 P.3d 1287, 1292 (App. 2009) (denial of "'all-inclusive, blanket'" records request which would have required "'unreasonable expenditure of resources and time'" to fulfill was not abuse of discretion); *cf.* Ariz. R. Sup. Ct. 123(c)(1), (f)(4)(A)(i) (regarding judicial-branch records requests). In determining whether production poses an unreasonable administrative burden, a court considers whether the general presumption of disclosure is overcome by: (1) the resources and time it will take to locate, compile, and redact the requested materials; (2) the volume of materials requested; and, (3) the extent to which compliance with the request will disrupt the agency's ability to perform its core functions. *See London*, 206 Ariz. 490, ¶ 9, 80 P.3d at 772; *Judicial Watch*, 228 Ariz. 393, ¶ 18, 267 P.3d at 1189; *Arpaio*, 221 Ariz. 116, ¶ 20-22, 210 P.3d at 1292; *accord* Ariz. R. Sup. Ct. 123(f)(4)(A). The analysis is, at its core, an inquiry into whether "the best interests of the state in carrying out its legitimate activities outweigh the general policy of open access." *Carlson*, 141 Ariz. at 491, 687 P.2d at 1246.

¶28 Here, the city presented evidence to the trial court that fulfilling Hodai's FBI-related communications request would be unreasonably burdensome, requiring "a search of nearly 1400 email accounts, and review and redaction of law enforcement sensitive information" for any FBI-related emails or email attachments therein. Hodai also specifically requested any FBI-related "faxes" and "letters." Faxes and letters are ordinarily in hard copy form, rendering an electronic keyword search impossible; thus, the court did not err in suggesting that Hodai's request would require the city to perform a time-intensive and costly manual search of all paper records TPD produced or received during the relevant time period to locate the requested records. *Cf. Bader*, 710 N.Y.S.2d at 379 (manual search of decades' worth of paper documents unreasonably burdensome). The court did not err in finding the city met its burden of proving that inspection is not warranted because identifying and redacting all FBI-related communications would be unreasonably burdensome.[9] *See, e.g.*, *Judicial Watch*, 228 Ariz. 393,

_____

[9]Hodai contends that even if Arizona law does recognize unreasonable administrative burden as falling within the "best

¶ 17, 267 P.3d at 1189; *accord Capitol Info. Ass'n*, 360 N.W.2d at 264 (request for all correspondence between city police and FBI or other federal law enforcement or investigative agencies during particular time period was "absurdly overbroad" and would impose "intolerable administrative burden[]").

**¶29**　　　Hodai's additional reliance on *Star Publishing* is unavailing. The records requested in that case—"the computer backup tapes of [the Pima County Assessor's Office] containing all documents for 1993"—were not unreasonably burdensome to locate or compile. 181 Ariz. at 433, 891 P.2d at 900. Although they contained voluminous electronic records, the backup tapes themselves were readily at hand, such that the administrative cost of actual production would have been low.[10] *See id.* (tapes already compiled and transferred to agency before request show compilation and transfer not unreasonably burdensome). Where requested records are readily identifiable, as were the backup tapes, the agency may not deny the request merely because the records contain a large quantity of information. *See id.* at 432, 891 P.2d at 901. But that is not the issue before us. Here, the trial court found that the requested FBI-related communications were not readily identifiable to begin with, and its ruling was not erroneous.

---

interests of the state" exception, the public's strong interests in privacy and Fourth Amendment protections regarding the use of the equipment, as well as public oversight and transparency, outweigh the burden in this case. While there are important interests at stake, a request for all documents referencing the FBI is not reasonably focused on protecting those interests.

[10]Additionally, the defendant in *Star Publishing* failed to point to or provide evidence of any specific risks that would result from the disclosure of any specific files on the backup tapes, and thus forfeited any argument about the administrative burden of redacting the voluminous records on the tapes. *See* 181 Ariz. at 433-34, 891 P.2d at 900-01.

**Adequacy of Search**

¶30        Hodai argues the trial court erred by finding the defendants had performed an adequate search for the requested documents.  The city has the initial burden to show it adequately searched for responsive records.  *Phx. New Times, L.L.C. v. Arpaio*, 217 Ariz. 533, ¶ 16, 177 P.3d 275, 281 (App. 2008).  "'In discharging this burden, the agency may rely on affidavits or declarations that provide reasonable detail of the scope of the search.'"  *Id.*, *quoting Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 547 (6th Cir. 2001).

¶31        The city relied on averments in its answer, which was verified by TPD Lieutenant Hall, and his affidavit that provides foundation for his knowledge of the facts in question.  Hall's affidavit states he was primarily responsible for use and maintenance of the equipment, he had attended Harris training, and he "was responsible for determining when and under what conditions the equipment would be utilized."  The court adopted as true the uncontested statements of Hall, which were made directly in his affidavit or indirectly by verification of the answer:

> The City says that it has searched for and produced all records responsive to [Hodai's] requests for records concerning Harris Corporation and its use of the Harris Corporation technology.  Lieutenant Hall, who is knowledgeable about the City's use of this technology, stated in his affidavit that he has thoroughly searched for the records and identified those that exist.

¶32        Relying principally on *Phoenix New Times*, Hodai posits that Hall was required to show the design of his search and to demonstrate that the design was adequate to locate all responsive records.  His reliance is misplaced.  *Phoenix New Times* concerned the promptness of the agency's response rather than the adequacy of its search.  217 Ariz. 533, ¶ 13, 177 P.3d at 280.  But to the extent the court considered the adequacy of the agency search as a factor in assessing the promptness of the response, it did not adopt the strict showing Hodai contends we should recognize.  *Id.* ¶¶ 23-25.  Rather,

the agency must demonstrate its search was "'reasonably calculated to uncover all relevant documents.'" *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 986 (9th Cir. 2009), *quoting Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985).

**¶33** Here, the record requests involved a single piece of equipment,[11] infrequently used, that was maintained and monitored by one TPD officer. The trial court could reasonably conclude that the statements in the affidavit combined with the verification of additional statements in the answer were sufficient to meet the city's burden to show the search was adequate. Unlike record requests that involve many employees, multiple agencies, or massive investigations, *see, e.g.*, *Phx. New Times*, 217 Ariz. 533, ¶¶ 18, 23, 177 P.3d at 281, 282; *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1479-80, 1483 (D.C. Cir. 1984) (60,000 pages concerning assassination of Dr. Martin Luther King, Jr.), a simple search by one person with knowledge may be sufficient. Additionally, as the court correctly noted, Hodai had the opportunity to contest Hall's statements but did not do so.

**¶34** Hodai also argues that because he obtained from the county attorney documents related to the closed criminal cases that were not in the files disclosed by the city, its search must have been inadequate. But Lieutenant Hall's affidavit refers to documents in the closed cases as "reports," intimating there are full case files that were not produced. Moreover, assuming functionally equivalent record requests to the separate agencies, "'the failure of an agency to turn up one specific document in its search does not alone render a search inadequate.'" *Lahr*, 569 F.3d at 987, *quoting Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). Hodai's alternative argument does not vitiate the court's conclusion that substantial evidence supports the adequacy of the city search.

---

[11]Record requests that do not directly involve Stingray, such as for FBI communications, are discussed in other sections.

**Promptness of Response in Disclosing Closed Case Reports**

¶35        Hodai argues on appeal, as he did below, that the four closed case files produced after he filed suit were not "promptly furnish[ed]" as required by § 39-121.01(D)(1), constituting wrongful denial of the records under § 39-121.01(E). The trial court did not specifically rule on the promptness of the response, but generally denied all additional relief to Hodai. However, the court did not consider whether the case files released to Hodai eight to ten months after the first document request were sufficiently prompt. Whether a response to a public records request was prompt is an issue we review de novo, assessing promptness in the context of the circumstances of the request. *McKee v. Peoria Unified Sch. Dist.*, 236 Ariz. 254, ¶¶ 14-15, 338 P.3d 994, 998 (App. 2014).

¶36        The city does not respond to the argument on appeal. Failure to respond may be considered a confession of error. *In re 1996 Nissan Sentra*, 201 Ariz. 114, ¶ 7, 32 P.3d 39, 42 (App. 2001). In our discretion, however, we address the city's argument as presented to the trial court. *See Savord v. Morton*, 235 Ariz. 256, ¶ 9, 330 P.3d 1013, 1016 (App. 2014).

¶37        The city contended that until Hodai requested particular criminal case files after he learned in litigation that Stingray had been used in the investigations, there was no duty to provide them as "work product" documents showing Stingray's use. It relied on Hall's affidavit in which he opined that because the case files do not contain "any reference to the technology," they "are not public records that respond to the Plaintiff's requests."

¶38        First, we reject the proposition that unless Stingray was referenced in a particular investigation, the case file would be shielded from a public records request. *Cf. Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 889-90 (D.C. Cir. 1995) (narrow search of agency index insufficient where responsive documents not in index also existed). We note that officers were instructed to "not mention [Stingray] in any supplement or report"—or even to discuss it with county or state prosecutors. This instruction would have shielded disclosure of a public record without the assertion of a recognized exception.

**¶39** Further, there is no indication in the record that it would have been difficult for TPD to promptly locate and disclose the records. As Hall acknowledged, he was the person "primarily responsible for the use and maintenance" of Stingray, and in that capacity could identify based on personal knowledge those investigations in which it had been used. Even if we assume that Hodai's records request for "all records . . . . that pertain in any way to 'Stingray' or 'Stingray II' cell phone tracking equipment" was ambiguous, at a minimum TPD should have clarified whether criminal investigations relying on Stingray were among the requested documents. *See Jarvik v. CIA*, 741 F. Supp. 2d 106, 115 (D.D.C. 2010) ("An agency can ask a [records] requestor to clarify or narrow an overly broad request."). Without explanation from the city regarding the facts of the delay, such as time needed to redact or difficulty in locating the documents, eight to ten months is not prompt. *See Phx. New Times*, 217 Ariz. 533, ¶¶ 20-25, 177 P.3d at 282 (143 days not prompt where agency assumed it had transferred responsive documents); *cf. McKee*, 236 Ariz. 254, ¶¶ 20-21, 338 P.3d at 999 (disclosure within twenty-four days prompt where many documents were requested and agency needed to gather from different departments). The trial court therefore erred in its implicit finding that the four case files were promptly produced.[12]

**Attorney Fees**

**¶40** Hodai contends the trial court abused its discretion by failing to award attorney fees under A.R.S. § 39-121.02.[13] Although Hodai requested attorney fees in both his complaint and his final

---

[12]Hodai also appears to argue the other documents the city lodged for review in camera were not promptly produced and were therefore wrongly denied. We need not decide whether the release of any of these documents was "prompt," because they have not been released at all.

[13]Hodai also requests fees pursuant to other statutes but he never raised these arguments below. We therefore do not address them on appeal. *See Harris*, 215 Ariz. 344, ¶ 17, 160 P.3d at 228.

motion before the trial court, the court did not explicitly rule on the issue. When we suspended the appeal to allow entry of a signed written order, both parties agreed final judgment should be entered and the court returned a judgment containing language of finality and citation to Ariz. R. Civ. P. 54(c). On appeal, both parties treat the attorney fee request as denied. We do the same.

**¶41** Under § 39-121.02(B), "[t]he court may award attorney fees and other legal costs that are reasonably incurred in any action under this article if the person seeking public records has substantially prevailed." Both the determination that the petitioner substantially prevailed and the award of fees after making such a finding are at the discretion of the trial court. *Democratic Party of Pima Cty. v. Ford*, 228 Ariz. 545, ¶¶ 8-10, 269 P.3d 721, 723-24 (App. 2012). Because we reverse the trial court's rulings denying disclosure of the redacted PowerPoint and concluding that the city acted promptly in disclosing the closed files, we remand to allow the court to determine in the first instance whether Hodai substantially prevailed and whether to award attorney fees.

**¶42** Hodai asks us to grant attorney fees and costs on appeal under § 39-121.02(B). We deny attorney fees without prejudice for Hodai to request in the trial court his fees incurred in this appeal. We award costs on appeal pursuant to A.R.S. § 12-341 upon compliance with Rule 21, Ariz. R. Civ. App. P.

## Disposition

**¶43** For the foregoing reasons, we affirm in part and reverse in part. We remand to allow the trial court to order disclosure of the redacted version of the PowerPoint and to determine whether to award attorney fees in light of the disclosure of new materials, as well as the promptness of the city's response.