IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————

JUDICIAL WATCH, INC.,
*Plaintiff/Appellant*,

*v.*

KRISTIN K. MAYES, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE
STATE OF ARIZONA; ARIZONA DEPARTMENT OF LAW, AN EXECUTIVE AGENCY
OF THE STATE OF ARIZONA,
*Defendants/Appellees*.

No. 2 CA-CV 2025-0322
Filed April 29, 2026

———————————

Appeal from the Superior Court in Maricopa County
No. CV2025005732
The Honorable Susanna C. Pineda, Judge

**VACATED AND REMANDED**

———————————

COUNSEL

David J. Hoffa, Phoenix
*Counsel for Plaintiff/Appellant*

Kristin K. Mayes, Arizona Attorney General
By Nancy M. Bonnell, Assistant Attorney General, Phoenix
*Counsel for Defendants/Appellees*

Heath Law PLLC, Scottsdale
By Ryan L. Heath
*Counsel for Amicus Curiae Warren Petersen*

**OPINION**

Judge Sklar authored the opinion of the Court, in which Presiding Judge Kelly and Chief Judge Staring concurred.

S K L A R, Judge:

¶1  This case arises out of a special action in the trial court to compel disclosure of public records. Judicial Watch, Inc. sought documents from the Arizona Attorney General's Office concerning its relationship with an entity called States United Democracy Fund. The request also encompassed States United's predecessor, the Voter Protection Program. The court entered judgment against Judicial Watch, in favor of the attorney general and her office. The court apparently concluded that the office had provided a sufficient index of documents that it had withheld as privileged. The court also concluded that the office had adequately searched for responsive records.

¶2  On appeal, Judicial Watch challenges both conclusions. As we explain below, we agree with Judicial Watch that neither the index nor the search was sufficient. We therefore vacate the trial court's judgment and remand for further proceedings.

**BACKGROUND**

¶3  In December 2024, Judicial Watch submitted a public records request to the attorney general's office seeking records from January 1, 2020, through the date of the office's response. The records sought included:

> Any communications between [the attorney general's office] and [States United Democracy Fund].
>
> . . . .
>
> Any agreement or letter of engagement between SUDC and [the attorney general's office].
>
> . . . .

> Any communications between SUDC or [the
> Voter Protection Program] and any individual
> or entity, public or private, discussing,
> researching, mentioning, or illuding to the
> investigation or prosecution of Republican state
> electors or "fake electors" for the 2020
> presidential election.

Judicial Watch also requested an index of withheld records, pursuant to A.R.S. § 39-121.01(D)(2).

¶4      Shortly after receiving the request, the attorney general's office furnished documents identified through a search of certain records dated January 1, 2023 and after. It informed Judicial Watch that additional responsive records had been withheld due to attorney-client and work-product privileges. The response also stated that the office was not aware of any correspondence with the Voter Protection Program but that it could conduct a search if more details were provided. Judicial Watch responded with the Voter Protection Program's domain name. The office then performed another search, which returned no additional records. Later, pursuant to a different records request, the office discovered and disclosed additional responsive records.

¶5      In February 2025, Judicial Watch filed a special-action complaint. *See* A.R.S. § 39-121.02. It alleged that the attorney general's office had violated Arizona's public-records laws by failing to promptly furnish public records and failing to furnish an index of records it had withheld. At some point thereafter, the office provided an index identifying two categories of documents that it asserted were subject to either the attorney-client privilege or work-product protection.

¶6      At a status conference in May 2025, Judicial Watch asked the trial court to require the attorney general's office to provide additional information regarding the assertedly privileged documents. The court declined to do so. It apparently concluded that the office had provided a sufficient index identifying those documents.

¶7      In June, after an evidentiary hearing, the trial court also concluded that the attorney general's office had adequately searched for and promptly provided records in response to Judicial Watch's request. It then entered a final judgment in favor of the office. Judicial Watch appealed.

**PRIVILEGE ASSERTIONS**

¶8 Judicial Watch first argues that the trial court committed an error of law by "declining to scrutinize the Attorney General's privilege assertions." Specifically, it argues that the court improperly refused to receive evidence on whether the privilege assertions were substantiated and denied Judicial Watch the ability to ask about the index of withheld records. It also argues that the court improperly allowed the attorney general's office to redact the names of States United representatives from the engagement letter.

## I. The privilege log was insufficient under *Fann v. Kemp*

¶9 As noted, the attorney general's office supplied Judicial Watch with an index of assertedly privileged documents that were otherwise responsive to Judicial Watch's request. The index contained two entries. Those entries referred collectively to twenty-one emails and twenty-nine attachments that the office had withheld. One entry read, "Emails from [attorney general's office] attorneys to States United attorneys." The other entry read, "Emails from States United attorneys to [attorney general's office] attorneys." The index listed "Attorney-client privilege and Attorney work-product" as the reason for withholding all the documents referenced by these entries. The index did not contain dates, the names of senders and recipients, or any additional description of the documents. As noted, the trial court appears to have concluded at the May 2025 status conference that this index was sufficient. However, the index was not admitted into evidence at that hearing.

¶10 Public-records requests are subject to certain limitations, one of which is the attorney-client privilege. *See Primary Consultants, L.L.C. v. Maricopa Cnty. Recorder*, 210 Ariz. 393, ¶ 9 (App. 2005) (no disclosure required when statute restricts access); A.R.S. § 12-2234. We narrowly construe privileges, and the party asserting a privilege has the burden of proving each of its elements. *Fann v. Kemp*, 253 Ariz. 537, ¶¶ 8-9 (2022). When public records are withheld, Section 39-121.01 requires the agency to provide an "index of records or categories of records that have been withheld and the reasons the records or categories of records have been withheld," or else access is deemed denied. § 39-121.01(D)(2), (E).

¶11 In *Fann v. Kemp*, which involved an assertion of legislative privilege, our supreme court explained that index entries must contain more than generalities. 253 Ariz. 537, ¶ 34. Rather, an index must include "specific assertions explaining why the document is purportedly privileged

4

to the greatest extent possible without revealing its content or otherwise violating the privilege." *Id.* (emphasis omitted). An index lacking in specificity cannot support a prima facie showing of the asserted privilege. *See id.* ¶ 36. Thus, index entries should adhere to Rule 26(b)(6)(A)(i) of the Arizona Rules of Civil Procedure and sufficiently describe the communications to allow assessment of the asserted privilege. *Id.* ¶ 34.

**¶12** The index in *Fann* did not satisfy these requirements. *Id.* It described the communications in vague terms such as "broadly relating to the planning, conduct, or results of [an] [a]udit" and "stating generally that withheld e-mails contained 'internal legislative discussions.'" *Id.* Our supreme court explained that, because these descriptors were vague, those communications could have included non-privileged matters. *Id.*

**¶13** Here, the index provided by the attorney general's office supplies no context about the withheld emails that would allow a court or any other party to determine if a privilege applies. The index therefore falls short of the standards set forth by *Fann*. *See id.* It follows that the office has not made a prima facie showing of privilege. *See id.* ¶ 8; *Clements v. Bernini*, 249 Ariz. 434, ¶ 8 (2020) (existence of attorney-client relationship required to show privilege). We thus agree with Judicial Watch that the privilege log's insufficiency prevented the trial court from adequately scrutinizing the office's privilege assertions.

**¶14** The attorney general's office argues that *Fann's* requirements apply only where the "privilege in question is complicated—like the legislative privilege." In light of *Fann*'s reliance on Rule 26(b), we disagree. *See* 253 Ariz. 537, ¶ 33. That rule expressly governs assertions of attorney-client privilege and work-product protection. We do not believe that our supreme court would direct public entities to apply the Rule 26(b) standard only in contexts in which the rule itself would not apply. Rather, we read *Fann* as applying to the privileges asserted by the office here.

**¶15** The attorney general's office also argues that the legislative history of Section 39-121.01 supports its position that the index requires less detail than a typical privilege log. But this argument is at odds with *Fann*, by which we are bound. *See City of Phoenix v. Leroy's Liquors, Inc.*, 177 Ariz. 375, 378 (App. 1993) ("[W]e are bound by decisions of the Arizona Supreme Court and have no authority to overrule, modify, or disregard them."). We therefore reject the argument.

**¶16** Instead, we remand to allow the attorney general's office to submit an index that comports with *Fann*. *See* 253 Ariz. 537, ¶ 35. If Judicial

Watch challenges any assertions of privilege or work-product protection, the trial court should meaningfully consider those challenges. Given this resolution, we need not address Judicial Watch's argument that the court deprived it of due process by denying it the chance to be further heard on the privilege issue.

II. **The attorney general's office supplied insufficient information to support a redaction on the States United engagement letter**

¶17 Judicial Watch additionally argues that the trial court erred by not analyzing whether the attorney general's office properly redacted the names of States United employees "principally responsible for the engagement" from the engagement letter. The unredacted portions of the letter do not provide any context as to these employees' roles within States United. Even assuming that they were attorneys and the office had validly claimed privilege, an attorney's identity generally falls outside the privilege's protections. *See Granger v. Wisner*, 134 Ariz. 377, 379 (1982) (attorney-client privilege only protects communications, not identity of parties). And, to the extent the office might have some valid basis for the redaction, neither the index nor the context of the letter itself supplies it. We thus remand to allow the office to either produce a version of the letter without the names redacted or assert a privilege that the court can address in the first instance.

## SUFFICIENCY OF THE SEARCH

¶18 Judicial Watch also argues that the trial court erred by concluding that the attorney general's office had performed a sufficient search for responsive records. Specifically, Judicial Watch argues that the court improperly allowed the office to limit the timeframe more narrowly than had been requested and to impose keyword-search limitations. We review de novo whether a denial of access to public records was wrongful but defer to the trial court's findings of fact. *W. Valley View, Inc. v. Maricopa Cnty. Sheriff's Off.*, 216 Ariz. 225, ¶ 7 (App. 2007).

¶19 The attorney general's office's employee who processed Judicial Watch's request testified that shortly before that request, *The Washington Post* had submitted a similar one. To fulfill that request, the employee and her supervisor had identified several individuals whose records were likely to contain the requested information. Once they received Judicial Watch's request, they concluded that portions of its request were "almost identical to the request that [*The Washington Post*] had also submitted." Due partly to this similarity, the employee did not

perform an independent search for the records Judicial Watch had requested. Rather, except for the later search for records involving the Voter Protection Program, she relied on the same search queries as for *The Washington Post*'s request.

¶20 In describing those searches, the employee testified that she had searched for responsive records using the States United domain name in conjunction with keywords such as "2020 election," "fake electors," and "alternate electors." That search was limited to emails sent to or received from the States United domain since January 1, 2023. When asked why she did not search for records going back to January 1, 2020, the employee explained that she had understood the request to be seeking records related to the current attorney general's fake-electors investigation and prosecution. She added that there was "no relationship between [the attorney general's office] and States United prior to the Mayes Administration when [attorney general Mayes] took office in 2023." The employee also testified that the search had been limited, at least initially, to certain custodians. Judicial Watch does not appear to argue that the office was required to include additional custodians.

¶21 Arizona law requires a government agency to search for records upon request. *See* A.R.S. §§ 39-121 (public records open to inspection), 39-121.01(D)(1) (any person may request). Public records are entitled to a "strong presumption in favor of disclosure." *McKee v. Peoria Unified Sch. Dist.*, 236 Ariz. 254, ¶ 23 (App. 2014). Government agencies seeking to avoid disclosure bear the burden of overcoming the presumption that disclosure is required. *Judicial Watch, Inc. v. City of Phoenix*, 228 Ariz. 393, ¶¶ 25-30 (App. 2011).

¶22 A public-records search must be "reasonably calculated to uncover all relevant documents." *Hodai v. City of Tucson*, 239 Ariz. 34, ¶ 32 (App. 2016). The agency has the initial burden to show it adequately searched for responsive records. *Id.* ¶ 30. Where requested records are readily identifiable, an agency may not deny the request merely because the records contain a large quantity of information. *Id.* ¶ 29. An agency seeking to avoid disclosure "must point to specific risks with respect to a specific disclosure." *Star Publ'g. Co. v. Pima Cnty. Atty's Off.*, 181 Ariz. 432, 434 (App. 1994). If the administrative burden of disclosing documents is unreasonable, our courts have recognized that agencies may withhold documents in the best interests of the state. *See Hodai*, 239 Ariz. 34, ¶ 27; *see also Carlson v. Pima County*, 141 Ariz. 487, 491 (1984) (allowing custodian of

public records to deny access in "the best interests of the state," subject to judicial scrutiny).

¶23 Here, the testimony from the attorney general's office employee demonstrates that the office did not search for all documents responsive to Judicial Watch's request. That request sought all "communications between the [attorney general's office] and [States United]" dating back to January 1, 2020, with no subject-matter limitations. But as the employee testified, the office imposed both date and keyword limits on its search. Although she explained the rationale for those limits, neither her testimony nor the attorney general's office's briefing identified any legal basis for imposing them. *See Hodai*, 239 Ariz. 34, ¶ 7. At best, the employee testified that the limitations were appropriate because prefatory language in the request, as well as some of the individual requests, concerned the fake-electors litigation. But the request for all communications between the office and States United was not restricted to this subject matter. We therefore find that explanation unpersuasive.

¶24 Beyond its employee's explanation, the attorney general's office has not explained why it was unable to perform the search inclusive of the whole timeframe in Judicial Watch's request. This timeframe includes 2020 through 2022, even if it was unlikely that any responsive documents from those years existed. Nor has the office asserted, let alone demonstrated, that such a search would have posed any unreasonable administrative burden. *See id.* ¶ 27. The office disclosed a small quantity of documents to Judicial Watch, and its privilege log identified only fifty documents. These quantities do not suggest that a complete search would have been burdensomely large. Furthermore, the office has not adequately explained why it limited its search to emails, when the request sought "any communications." Nor has it persuasively explained why it could not retrieve all the emails sent between the office and States United as Judicial Watch had requested, instead of using limiting keywords.

¶25 We therefore conclude that the attorney general's office has not met its burden of showing that it adequately searched its records. *See id.* ¶ 30. The office was not entitled to disregard Judicial Watch's unambiguous records request in favor of its own, narrower interpretation. *See Phx. New Times, L.L.C. v. Arpaio*, 217 Ariz. 533, ¶ 38 (App. 2008) ("[A]n agency may not justify its failure to provide records by claiming that it assumed that the person requesting the records would no longer be interested in them under certain circumstances."). We remand with directions that the trial court order the office to search its records under the

applicable legal standard and produce any additional responsive documents. The court may conduct any additional hearings that it deems necessary to carry out these directions. Given our remand, we need not address Judicial Watch's arguments that the trial court deprived it of due process by denying it the chance to further brief the issue.

## ATTORNEY FEES AND COSTS

¶26 Judicial Watch seeks its attorney fees and costs under A.R.S. §§ 12-341, 12-349(A)(1) and (3), and 39-121.02(B). Section 39-121.02(B) authorizes an award when a party seeking public records has "substantially prevailed." In light of our remand, whether Judicial Watch is more successful than not in "obtaining the requested records, defeating the government's denial of access to public records, or securing other relief" is yet undetermined. *See Am. C.L. Union of Ariz. v. Ariz. Dep't of Child Safety*, 251 Ariz. 458, ¶ 28 (2021). We therefore decline to award fees under that statute, without prejudice to Judicial Watch seeking to recover its fees in the trial court. None of the other authority cited by Judicial Watch allows for a fee award in this context. However, as the prevailing party on appeal, Judicial Watch is entitled to recover its costs under Section 12-341 upon compliance with Rule 21(b) of the Arizona Rules of Civil Appellate Procedure.

## DISPOSITION

¶27 For the foregoing reasons, we vacate the trial court's judgment and remand this case for further proceedings consistent with this opinion.