IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

JOHN M. LUNNEY, et al., *Plaintiffs/Appellants,*

*v.*

STATE OF ARIZONA, et al., *Defendants/Appellees.*

FRED ZEDER, *Defendant/Appellee.*

No. 1 CA-CV 16-0457
FILED 12-7-2017

———————————————

Appeal from the Superior Court in Maricopa County
No. CV2015-003081
The Honorable Patricia A. Starr, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**
———————————————

COUNSEL

Zapata Law PLLC, Chandler
By Julio M. Zapata
*Counsel for Plaintiffs/Appellants*

Jardine, Baker, Hickman & Houston, P.L.L.C., Phoenix
By Michael Warzynski
*Counsel for Defendants/Appellees State of Arizona*

Dickinson Wright PLLC, Phoenix
By Scot L. Claus, Holly M. Zoe
*Counsel for Defendant/Appellee Fred Zeder*

## OPINION

Presiding Judge Paul J. McMurdie delivered the opinion of the Court, in which Judge Peter B. Swann and Judge Maurice Portley[1] joined.

**M c M U R D I E**, Judge:

¶1        Robin M. and John M. Lunney appeal the superior court's judgment in favor of the State. We hold the attorney general's office's involvement in responding to the Lunneys' public records requests did not violate Arizona's Public Records Law because it did not unnecessarily delay the process of promptly providing the requested information. We also hold under Arizona's Public Records Law: (1) when responding to public records requests, state agencies are required to query and search their electronic databases and produce responsive public records; (2) a public employee's private cell phone records pertaining to the conduct of public business may become public records subject to disclosure if a public records requestor establishes the employee used the cell phone for a public purpose; (3) without justification for the delay, a 135-day response time to a request is not prompt; and (4) under these facts, the State's responses to the Lunneys' other requests were otherwise prompt and complete. Accordingly, we affirm in part and remand for further proceedings consistent with this opinion.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Following the death of their son in December 2012, the Lunneys made numerous requests under Arizona's Public Records Law to the Arizona Department of Public Safety ("DPS") and the Arizona Department of Transportation ("ADOT"). Initially, the agencies sent the responses directly to the Lunneys. However, in July 2014, Assistant Attorney General Fred Zeder asked the agencies to forward all requests and responses to the attorney general's office. The attorney general's office

---

[1]      The Honorable Maurice Portley, retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

would then forward the responses to the Lunneys in "Supplemental Disclosures."

¶3 In 2015, the Lunneys filed a statutory special action under Arizona Revised Statutes ("A.R.S.") section 39-121 against the State, ADOT, DPS, and Zeder in his official capacity.[2] The complaint alleged the defendants violated Arizona's Public Records Law by failing to provide access to public records, and applied for an order to show cause why the Lunneys' requested relief should not be granted. Zeder moved to dismiss the claim against him, which the court granted.[3]

¶4 Following a four-day hearing and additional briefing, the court found the State did not violate Arizona's Public Records Law by routing requests through the attorney general's office, and the State was not required to consult multiple databases to obtain information and create responsive documents. The superior court also made findings on each request at issue. The Lunneys had specifically claimed they were entitled to the private cell phone records of the officers at the scene of the accident, so the court ordered the parties to meet and prepare a joint report for the court on the cell phone issue. Following additional briefing, the superior court entered a final judgment finding for the State on all issues. The Lunneys timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶5 The Lunneys raise four issues on appeal: (1) whether the agencies violated Arizona's Public Records Law by routing requests and responses through the attorney general's office instead of responding to the Lunneys directly; (2) when responding to requests, were the agencies required to query and search their electronic databases and produce

---

[2] In December 2013, the Lunneys also filed a wrongful death action against DPS and ADOT stemming from the death of their son. *Lunney v. State*, Maricopa County Superior Court case number CV2013-096220.

[3] In their reply brief, the Lunneys acknowledged they had waived any challenge to the court's order granting Zeder's motion to dismiss. Therefore, we summarily affirm. *Van Loan v. Van Loan*, 116 Ariz. 272, 274 (1977) ("The failure to raise an issue . . . in briefs on appeal constitutes a waiver of the issue.").

records subject to disclosure from those databases; (3) does Arizona's Public Records Law require disclosure of police officers' private cell phone records, "where the officers use their private cellular phones in the ordinary course of their employment on agency business;" and (4) did the agencies violate Arizona's Public Records Law by failing to respond timely and completely to the Lunneys' requests.

¶6          Whether a document is a public record and whether a denial of access to public records was wrongful are issues of law we review *de novo*. *Griffis v. Pinal County*, 215 Ariz. 1, 3, ¶ 7 (2007); *Cox Arizona Publ'ns, Inc. v. Collins*, 175 Ariz. 11, 14 (1993).

¶7          "Public records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours." A.R.S. § 39-121. Arizona law defines "public records" broadly, and a presumption in favor of disclosure exists. *Griffis*, 215 Ariz. at 3–4, ¶ 8; *see Carlson v. Pima County*, 141 Ariz. 487, 489 (1984). Section 39-121.01(B) requires "[a]ll officers and public bodies" to maintain all records "reasonably necessary or appropriate to maintain an accurate knowledge of their official activities and of any of their activities which are supported by monies from this state or any political subdivision of this state."

¶8          Our supreme court has articulated three definitions of public records: (1) a record "made by a public officer in pursuance of a duty, the immediate purpose of which is to disseminate information to the public;" (2) a record "required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law or directed by law to serve as a memorial and evidence of something written, said or done;" or (3) any "written record of transactions of a public officer in his office, which is a convenient and appropriate method of discharging his duties, and is kept by him as such, whether required by . . . law or not." *Mathews v. Pyle*, 75 Ariz. 76, 78–79 (1952) (citations omitted). The "nature and purpose" of a document determines its status as a public record. *Griffis*, 215 Ariz. at 4, ¶ 10. A document must have a "substantial nexus with a government agency's activities," and documents of a "purely private or personal nature" are not public records. *Id.*; *Salt River Pima-Maricopa Indian Cmty. v. Rogers*, 168 Ariz. 531, 541 (1991).

**A.** **Agencies are Entitled to Seek Legal Advice from the Attorney General's Office, and the Involvement of the Attorney General Did Not Violate Arizona's Public Records Law.**

¶9          The Lunneys argue the State violated Arizona's Public Records Law by routing requests and responses through the attorney general's office, rather than responding directly to the Lunneys. The Lunneys contend Arizona's Public Records Law does not "specify that the agency furnish those documents to another agency or department," and a fair reading of the law is that "production of responsive public records be made directly to the requestor, and certainly not some other arm of government."

¶10          As the chief legal officer of the State, the attorney general is required to be the legal advisor to state departments and to "render such legal services as the departments require." A.R.S. § 41-192(A)(1); *Arizona State Land Dep't v. McFate*, 87 Ariz. 139, 143 (1960). Determining whether a request is appropriate under the public records law can involve legal advice. *See Fisher v. Maricopa County Stadium Dist.*, 185 Ariz. 116, 124 (App. 1995) ("legal advice" encompasses advice given to a public body "regarding the legal ramifications of the facts and information given" and "the legality" of the proposed action) (quoting *City of Prescott v. Town of Chino Valley*, 166 Ariz. 480, 485 (1990)). Accordingly, routing public record requests and responses through the attorney general's office to ensure legal compliance with Arizona's Public Records Law does not violate the law.

¶11          The Lunneys maintain, however, that Arizona's Public Records Law does not "envision" the restrictions placed upon the Lunneys by the assistant attorney general.[4] Specifically, the Lunneys argue the law does not allow an assistant attorney general to direct an agency to ignore a requestor, to order a requestor to refrain from contacting the agency from which he has sought documents, or to threaten

---

[4]          In their briefs to this court, the parties disagree whether attachments to a pleading submitted to the superior court by the Lunneys are part of the record. However, the substantive references the Lunneys made in the pleading are found elsewhere in the record, and the superior court relied on the pleading in its ruling. Therefore, we need not resolve the issue of whether the pleading is part of the record on appeal.

a requestor with arrest "should he exercise his right to obtain documents directly from the [a]gencies."[5]

¶12        Generally, the attorney general's office "has no right to make rules or regulations in the other departments in connection with their operation." *State ex rel. Morrison v. Thomas*, 80 Ariz. 327, 332 (1956). Likewise, one party generally cannot object to the other party's legal representation. *See Alexander v. Superior Court (State)*, 141 Ariz. 157, 161 (1984) ("Only in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent."). If the attorney general's office overstepped its authority with respect to an agency here, any objection is for the agency to raise, not the Lunneys. The Lunneys' complaint is limited to whether the State wrongfully denied them access to public records. *See* A.R.S. § 39-121.02(A) ("Any person who has requested . . . public records . . . and who has been denied access to . . . such records, may appeal the denial . . . .").

¶13        DPS's safety and records manager Teresa Fuentes testified that after the attorney general's office became involved, DPS continued processing responses just as it would any other request. But instead of sending them directly to the Lunneys, DPS sent the responses to the attorney general's office to be forwarded to the Lunneys. Zeder's paralegal testified it typically took one to three days for the attorney general's office to send a response to the Lunneys.[6] The superior court found the Lunneys did not establish that Arizona's Public Records Law "prohibits the procedure employed in this case" and that the "decision of the State . . . to route [the Lunneys'] requests through counsel resulted in no significant delay, and there has been no showing that the procedure

---

[5]        Assuming these arguments are based in fact, we find it disconcerting that, absent evidence of criminal conduct, an attorney representing a state agency would instruct a public records requestor to not contact the agency and threaten to contact law enforcement if he did. Despite these alleged actions by the lawyers for the State, the Lunneys continued to make requests and the agencies continued to respond to the Lunneys' requests.

[6]        The attorney general's paralegal testified the process slowed down for a period after the assistant attorney general was named personally as a defendant in the special action and when the State was waiting on a response from the Lunneys.

resulted in denial of production of any documents." The superior court also found nothing "in the public records statutory scheme specifically requires an agency to provide records directly to a requestor, nor are an agency [or its] employees restricted from seeking legal advice."

¶14 Arizona's Public Records Law does not delineate the procedure state agencies must follow when responding to requests, other than to require a records custodian to "promptly furnish" public records. *See* A.R.S. §§ 39-121 to -128. "Courts will not read into a statute something that is not within the manifest intent of the Legislature as gathered from the statute itself." *Collins v. Stockwell*, 137 Ariz. 416, 420 (1983). The Lunneys do not allege that the Attorney General's involvement substantively affected the responses that the they received. *See Carlson*, 141 Ariz. at 491 ("[W]here the countervailing interests of confidentiality, privacy or the best interests of the state should be appropriately invoked to prevent inspection . . . the officer or custodian may refuse inspection."). Because the agencies are entitled to receive legal assistance from the attorney general's office, and because the procedure employed by the State in this case did not violate Arizona's Public Records Law by unnecessarily delaying the responses, we affirm the superior court's decision on this issue.

**B.     Agencies are Required to Query and Search their Electronic Databases to Produce Responsive Public Records Subject to Disclosure.**

¶15 The Lunneys argue the State was required to query and search its electronic databases to produce records subject to disclosure.[7]

**1.     The Lunneys' Request for Information about the Major Crimes District Commander.**

¶16 On January 30, 2014, the Lunneys requested the "name[,] rank[,] badge number[,] [and] call sign for the Major Crimes District Commander" on December 8, 2012. On May 31, 2015, DPS sent the

---

[7]     Below, the Lunneys argued three items (Items 16, 25/26, 30) were "database issues," although those items were not specifically referenced as such in the opening brief. We discuss Items 16 and 25/26 in this section, and discuss Item 30 as a "Promptness and Responsiveness" issue, as Item 30 does not involve an electronic database search and was not argued as a "database" issue in the Lunneys' opening brief.

Lunneys a letter in response stating the request "is not a request for records." However, on August 31, 2014, the Lunneys made a similar request for the identities of personnel in the special investigations unit. DPS responded to the August 31 request with a document created by a DPS employee identifying officers as Major Crimes District Commanders for incidents dated January 1, 2011, to December 13, 2013.

¶17 On appeal, the Lunneys' arguments regarding this request are limited to: "DPS provided responsive documents to a request for the identity of members of a special investigation unit but responded to a nearly identical request for the identify of members of a major crimes unit was not a public records request," and "the State never did produce these public records stored in databases." The Lunneys have not directed us to any evidence in the record showing DPS's response to the August 31 request did not encompass the information sought in the January 30 request. We affirm the superior court's finding that the State did not violate Arizona's Public Records Law in responding to this request. *See* ARCAP 13(a)(7) ("An "argument" . . . must contain: [a]ppellant's contentions concerning each issue presented for review, with supporting reasons for each contention, and with citations of legal authorities and appropriate references to the portions of the record on which the appellant relies.").

### 2. The Lunneys' Request for Information about On-Duty Officers.

¶18 The Lunneys requested "ALL: first and last names, badge numbers, call-signs and vehicle numbers, for those officers associated with East, West, Central and McDowell commands that were ON DUTY from December 7, 2012 between the hours of 7:00 PM and 8:00 AM of December 8, 2012." Six days later, the State, through the attorney general's office, responded to the Lunneys by letter saying, "DPS does not have any responsive documents [to this request] . . . . This information may be available within various databases maintained within separate departments of DPS. If you . . . require this information, please serve a formal interrogatory on our office and we will research and provide an appropriate response."

¶19 The superior court noted "an agency need not create a record in order to respond to a public records request." *See Lake v. City of Phoenix*, 222 Ariz. 547, 551, ¶ 15 (2009). The superior court also ruled if the State created documents to respond to some of the Lunneys' requests, that does not mean it was obligated to do so for others; and the State's failure

to create documents did not violate Arizona's Public Records Law. Specifically, the superior court concluded Arizona law did not require DPS to create a document compiling the information from the different databases as the Lunneys requested.

**¶20** Arizona's Public Records Law requires a state agency to "query and search its database to identify, retrieve, and produce responsive records for inspection" if the agency maintains public records in an electronic database. *American Civil Liberties Union v. Arizona Department of Child Safety (ACLU)*, 240 Ariz. 142, 144, ¶ 1 (App. 2016). Agencies are not required to "tally and compile previously untallied and un-compiled information or data available" in an electronic database. *Id.*

**¶21** In *ACLU*, we held a state agency did not have to respond to requests seeking "information about information." 240 Ariz. at 150, ¶ 24. To respond to the requests at issue in *ACLU*, the agency "would have had to write a computer program to extract the raw data" from a database, "determine or calculate" what information fell within the categories requested, and analyze the information it found. *Id.* at 151, ¶ 23. Federal courts interpreting the Freedom of Information Act ("FOIA")[8] have also recognized agencies are not required to respond to requests for "aggregate data," meaning a request that requires an agency to create a new record listing, indexing, or aggregating information about information in a database. *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012); *see, e.g., Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 231, 242 (D. Conn. 2012) (an agency need not respond to requests for aggregate or statistical information, such as requests for the "number of" and outcomes of courts martial or benefit claims filed with agencies, or a breakdown of information by race or gender); *Frank v. U.S. Dep't of Justice*, 941 F. Supp. 4, 5 (D.D.C. 1996) ("FOIA provides access to existing records but does not establish a research service[;] FOIA entitles citizens to the disclosure of documents, but it does not oblige the government to answer their questions."); *ACLU*, 240 Ariz. at 149–50, ¶ 21.

---

[8] Arizona's Public Records Law is broader than FOIA, *see* 5 U.S.C.A. § 552, but "[w]hen interpreting Arizona's public records statutes, it is appropriate to look to FOIA for guidance." *Phoenix New Times, L.L.C. v. Arpaio*, 217 Ariz. 533, 539, ¶ 15, n.3 (App. 2008). A federal agency's responsibility to search databases to respond to a FOIA request is analogous to a state agency's responsibility to search databases to respond to a request under Arizona's Public Records Law.

¶22            The Lunneys argue *ACLU* is distinguishable from this case because there the agency was asked to "tally or compile numerical or statistical information and percentages" and "create a new record that compiles analytical information about information." We agree.

¶23            A distinction exists between "searching an electronic database to produce existing records and data" and "searching an electronic database to compile information about the information it contains." *ACLU*, 240 Ariz. at 149, ¶ 18. Here, the Lunneys did not request information *about* information, they simply wanted the names and related information about the officers on duty during a specified period. The State informed the Lunneys the information may be "available within various databases maintained within separate departments of DPS." DPS's records manager Fuentes testified, "if structured in a proper request for the same information, that is a public records' request, but as a request for that information relative to [officers]," DPS could "possibly" go to various sources and find the information. The State is not required to create a single comprehensive document responding to the Lunneys' request. But to the extent the information requested is a public record, the State is required to "query and search" its electronic databases and produce any responsive documents that result from those searches. This is true even if the search would require the agency to search various databases. Therefore, we reverse the superior court's findings on this issue, and remand for the court to order the production of the information.

## C.    If a Public Records Requestor Establishes an Officer Used his or her Personal Cell Phone for Public Business, the Cell Phone Records May Become Public Records Subject to Disclosure.

¶24            The Lunneys made three requests seeking information regarding DPS officers' personal cell phone records. None of the requests specifically stated the Lunneys were seeking "cell phone" or "personal" records. Rather, the requests were for the "phone records" of two DPS officers. After the evidentiary hearing, the superior court found, "[a]s written, the [requests] did not put DPS on notice that Lunney sought [personal cell phone] records." The superior court then ordered the parties to meet and prepare a Joint Report that:

> (1) delineate[s] specifically which records Plaintiffs seek from the cell phones at issue; (2) an explanation from the State Defendants as to whether the records sought exist; and (3) if the records no longer exist, include an explanation of what investigation was conducted to determine the status of

the documents. If the documents exist, counsel for the Defendants is directed to provide copies to the Court for *in camera* review . . . .

¶25        The parties did not submit a joint report to the court as ordered; instead, each party filed a Report on the Effort to Meet and Confer. The superior court ordered the Defendants to provide the personal cell phone numbers of the two DPS officers and their cell phone providers. The State reported to the superior court the officers informed counsel that "the cell phone records do not exist in the possession of either officer." The superior court then issued its final judgment, finding in favor of the State.

¶26        The Lunneys argue records of officers' cell phone use while on duty fit within one of Arizona's three definitions of public records. Further, even if cell phone records do not meet the definition of public records, the Lunneys contend "Arizonans have a right to access records that may not be required by law to be kept as public records, but which relate to the public's general welfare," and "it hardly could be doubted that records pertaining to the use of a device so fundamental to police business as a cellular telephone by an officer on duty . . . qualify as public records because they have a substantial nexus to the police agency's activities." *See Bradford v. Dir., Emp't Sec. Dep't*, 128 S.W.3d 20, 28 (Ark. Ct. App. 2003) ("[t]he creation of a record of communications about the public's business is no less subject to the public's access because it was transmitted over a private communications medium . . ."); *Bertoli v. City of Sebastopol*, 182 Cal. Rptr. 3d 308, 325 (App. 2015), *as modified* (Jan. 30, 2015) ("an e-mail message which both relates to the conduct of the public's business and is written and retained by an agency employee on his/her personal computer or cell phone is arguably a [public record under California's Public Records Act]").

¶27        The public is not entitled to a public employee's purely personal records. *See Griffis*, 215 Ariz. at 4, ¶ 10. As recognized by the United States and Arizona Supreme Courts, an individual has a cognizable privacy interest in his or her personal cell phone. *Riley v. California*, 134 S. Ct. 2473, 2489–90 (2014); *State v. Peoples*, 240 Ariz. 244, 249, ¶ 16 (2016). However, the line between public and private records is not always clear, and when a "substantial question" exists as to whether information is subject to disclosure, courts must first determine if the information qualifies as a public record. *Griffis*, 215 Ariz. at 5, ¶ 13.

¶28 The threshold to show whether a "substantial question" exists about a document's status is "relatively low." *Griffis*, 215 Ariz. at 6, ¶ 16. In the case of a public employee's personal cell phone records, a requestor can raise a "substantial question" by showing the employee used his or her personal cell phone for a public purpose. *See id.* However, mere use of a private cell phone during working hours is insufficient to meet the threshold showing; rather, the requestor must present evidence the information on, or use of, a private cell phone created a public record. *See id.* at 4, ¶ 11 (holding that a public officer or agency merely possessing a document makes the document a public record "would create an absurd result . . . [u]nder that analysis, a grocery list written by a government employee while at work, a communication to schedule a family dinner, or a child's report card stored in a desk drawer in a government employee's office would be subject to disclosure"). If the threshold showing is met, the burden then shifts to the party claiming the record is private to so establish. *Id.* at 6, ¶ 16.

¶29 If a document is a public record, Arizona's presumption in favor of disclosure applies, and "when necessary, the court can perform a balancing test to determine whether privacy, confidentiality, or the best interests of the state outweigh the policy in favor of disclosure." *Griffis*, 215 Ariz. at 5, ¶ 13. *In camera* review is appropriate when competing interests may limit disclosure. *Id.* at 6, ¶ 16 (*in camera* review is appropriate where a requestor has shown "a government agency or public official withheld documents generated or maintained on a government-owned computer on the grounds that those documents are personal or private"); *Mathews*, 75 Ariz. at 81 (case remanded for the documents in question "to be produced in court for the private examination of the trial judge in order that the court may determine whether [the] . . . documents are confidential and privileged or whether their disclosure would be detrimental to the best interests of the state"); *Little v. Gilkinson*, 130 Ariz. 415, 417 (App. 1981) (approving a trial court's *in camera* inspection to protect the confidentiality of police files).

¶30 Here, the superior court relied on a DPS officer's testimony, given in a deposition in the wrongful death case, that DPS officers will use their personal cell phones to conduct police business while working. Based on that evidence, the court ordered the parties to determine if the records existed, and, if they did, to produce them for *in camera* inspection. Fuentes testified DPS does not collect personal cell phone records for officers, and after the superior court's order, DPS contacted the officers and were told the records did not exist. The superior court then found in favor of the State on this issue. Because there is no evidence presented that

the records are available, we need not decide if the threshold showing was made in this case that the officers' cell phone records were public, and we affirm the superior court's ruling that DPS did not violate Arizona's Public Records Law by failing to produce the officers' private cell phone records.

**D.    Without Justification, a 135-Day Response Time to a Public Records Requests Is Not Prompt, but the State Otherwise Promptly and Completely Responded to the Lunneys' Requests.**

**¶31**        The Lunneys argue certain records were not promptly produced. Under Arizona's Public Records Law, "when records are subject to disclosure the required response is the prompt and actual production of the documents." *Phoenix New Times, L.L.C. v. Arpaio*, 217 Ariz. 533, 538, ¶ 12 (App. 2008); *see also* A.R.S. § 39-121.01(D)(1). Whether a response is prompt depends on the factual circumstances of the request. *Phoenix New Times*, 217 Ariz. at 538, ¶ 14; *W. Valley View, Inc. v. Maricopa County Sheriff's Office*, 216 Ariz. 225, 230, ¶ 21, n.8 (App. 2007). The burden is on the agency to establish its responses to requests were prompt. *See Phoenix New Times*, 217 Ariz. at 538–39, ¶ 15.

**¶32**        Below, the Lunneys argued the State did not timely respond to the following items: 1, 4, 28, 31–35. The Lunneys argued the State's responses to the following items were both untimely and incomplete: 1–3, 7–8, 10, 12, 14, 16, 18–20, 22–25, 27, 30, 31, 36, and 38. We first address the items the Lunneys discussed in detail in their opening brief.

**1.    The Lunneys' Request for Information about a DPS Officer and Individuals Under his Supervision.**

**¶33**        On November 17, 2014, the Lunneys requested information about "individuals under the supervision of [DPS's] Bart Graves on December 7, 8, 9 of 2012." DPS responded to the request on March 30, 2015, and the Lunneys received the response on April 1, 2015, as part of the State's 13th Supplemental Disclosure Statement. Fuentes testified that this response was not timely and that an "employee performance issue" caused the delay.

**¶34**        The superior court found DPS did not timely respond, but found "[H]uman error was to blame. There is no evidence of any bad faith by DPS or an attempt to prevent Lunney from learning the information requested." However, "evidence of inattentiveness on the part of the public body does not establish the promptness of a response." *Phoenix New Times*, 217 Ariz. at 541, ¶¶ 27–28 ("By offering no legally sufficient

reason why 141 days should be considered 'prompt' disclosure of documents that were clearly requested and immediately available, [the government agency] failed, as a matter of law, to meet its burden of establishing that it did not wrongfully deny the . . . document request.").

¶35     Fuentes testified DPS did not begin working on the request until February 2015, but provided no reason why the employee did not begin working on the request until that date, or why DPS did not provide the response until March 30, 2015. While denial is not wrongful if a custodian made "reasonable efforts" and "acted in good faith," *Phoenix New Times*, 217 Ariz. at 541, ¶ 28, n.5, there is no evidence here that the State made reasonable efforts to promptly respond to this request. *Cf. McKee v. Peoria Unified Sch. Dist.*, 236 Ariz. 254, 259, ¶ 21 (App. 2014) (unintentional failure to include a set of notes with a 150-plus-page disclosure and quickly correcting the mistake is not bad faith and "does not undermine the overall reasonableness/promptness" of the response).

¶36     It took the State 135 days, meaning 95 working days, to respond to this request. Because the State did not provide a legally sufficient reason for the delay, we hold the State's response to this request was not prompt. We remand for the superior court to determine an appropriate sanction addressing the State's failure to timely respond to this request in accordance with A.R.S. § 39-121.02.

### 2.    The Lunneys' March 13, 2015 Request.

¶37     Mr. Lunney testified he submitted a request on December 16, 2014, but resubmitted the request on March 13, 2015, after not having received a response. DPS responded to the request on March 27, 2015, and the Lunneys received the response on April 1, 2015, as part of the State's 13th Supplemental Disclosure Statement. There is no record of a request dated December 16, 2014, and Fuentes testified the date of the request was March 13, 2015, and the two-week response time was "reasonable."

¶38     The superior court found the evidence did not support the Lunneys' claim they first made the request on December 16, 2014, and found DPS timely responded to this request. We affirm the superior court's finding the State's response to this request was prompt.

### 3.    The Lunneys' Request for Information about Vehicle Collisions in Maricopa County.

¶39     On December 25, 2014, the Lunneys submitted a request for Information about Vehicle Collisions in Maricopa County, and the State

responded to the request on April 16, 2015, as part of the State's 15th Supplemental Disclosure Statement. The State's response was over 2000 pages. The superior court found, "Given the extent of the documentation that was responsive to this [request] . . . the response was timely made."

**¶40** In their opening brief, the Lunneys do not challenge the superior court's finding. Rather, the Lunneys argue the superior court "seemed not to take into account evidence that the response was non-responsive." However, below, the Lunneys stated the only issue with this request was the timeliness of the State's response. Issues not raised before the superior court are waived on appeal. *See Romero v. SW. Ambulance*, 211 Ariz. 200, 204, ¶ 7 (App. 2005). Therefore, we decline to address the Lunneys' argument that the State's response to this request was not responsive. Because the Lunneys do not challenge the superior court's finding regarding the promptness of the response, we do not address the issue on appeal. *Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009) ("Opening briefs must present and address significant arguments, supported by authority that set forth the appellant's position on the issue in question.").

### 4. The Lunneys' Request for Information about Employees on Leave.

**¶41** On November 6, 2014, the Lunneys requested information, including name, rank, badge numbers, and call signs, for all DPS employees on duty December 7 or 8, 2012, who took or were required to take leave or vacation between December 6, 2012, and January 31, 2013. On April 1, 2015, an attorney representing DPS and ADOT informed the Lunneys that responding to this request would take one employee, working full-time on this request alone, approximately six to eight weeks to respond. Due to the burdensome nature of the request, DPS did not respond to the request.

**¶42** The superior court found this request was "unduly burdensome," that requiring DPS to respond would "substantially impair its ability to respond to public records requests in other cases," and that DPS was not required to respond. The Lunneys argue the superior court failed to weigh the burden imposed on the agency against the public's interest in disclosure, and the superior court "did not specify that the requested records would be difficult to identify." *See Cong. Elementary Sch. Dist. No. 17 of Yavapai County v. Warren*, 227 Ariz. 16, 19, ¶ 12 (App. 2011)

(involving public records requests requiring more than 417 hours to review nearly 9000 pages of documents).[9]

¶43        Arizona courts have held the burden imposed on the government by responding to an unfettered disclosure request can outweigh the public interest in disclosure of public records. *See, e.g., London v. Broderick*, 206 Ariz. 490, 493, ¶ 9 (2003); *Hodai v. City of Tucson*, 239 Ariz. 34, 43, ¶ 27 (App. 2016) (a search of 1400 email accounts that would have to be reviewed and redacted, plus documents normally available in hard copy form only, required a "time-intensive and costly manual search of all paper records" and was "unreasonably burdensome," not requiring inspection by the agency); *Judicial Watch, Inc. v. City of Phoenix*, 228 Ariz. 393, 397, ¶ 17 (App. 2011). The agency wishing to withhold public documents bears the burden of proving the burden of disclosure outweighs the public interest in inspecting the records. *Id.* To determine if producing documents "poses an unreasonable administrative burden," courts consider whether the general presumption in favor of disclosure is overcome by: "(1) the resources and time it will take to locate, compile, and redact the requested materials; (2) the volume of materials requested; and, (3) the extent to which compliance with the request will disrupt the agency's ability to perform its core functions." *Hodai*, 239 Ariz. at 43, ¶ 27.

¶44        In the State's letter to the Lunneys in response to their request, the State explained there are approximately 1100 DPS employees, time sheets are not automated or kept in a centralized location, the information would need to be reviewed and redacted prior to disclosure, and it would take approximately six to eight weeks for one person to complete the response. Fuentes also testified DPS does not have an employee who can work on this type of request for six to eight weeks. The superior court did not err by finding DPS was not required to respond to this "unduly burdensome" request.

---

[9]     In *Congress Elementary*, the government was seeking an injunction prohibiting defendants from filing additional public records requests without leave of the superior court, and this court denied the district's request for prospective relief. *Id.* at 17, 20, ¶¶ 4, 17.

### 5.    The Remaining Requests at Issue.

¶45        On appeal, the Lunneys also argue the record shows "the State refused to produce public records in relation to 24 of 35 'valid, concise, and reasonable [requests],'" and "the State refused to disclose documents requested in six further [Arizona's Public Records Law] requests." The Lunneys argue "the agencies produced nonresponsive or incomplete records" and describe several responses they take issue with. The Lunneys do not, however, reference the responses by Item or Exhibit number or support their arguments on appeal with references to caselaw or evidence in the record demonstrating how the responses were incomplete, as required. *See* ARCAP (13)(a). Therefore, we do not address each issue in detail here. *Krasner*, 221 Ariz. at 305, ¶ 62 (appellant's failure to cite "authorities, statutes, and parts of the record" can constitute [an] abandonment and waiver" of a claim).

### E.    Because the Lunneys Have Not Substantially Prevailed on Appeal, their Request for Attorney's Fees is Denied.

¶46        The Lunneys requested attorney's fees pursuant to Arizona Rule of Civil Appellate Procedure 21(a) and A.R.S. § 39-121.02. Under A.R.S. § 39-121.02(B), a court may award attorney's fees "if the person seeking public records has substantially prevailed." We deny the Lunneys' request for attorney's fees, finding the Lunneys have not "substantially prevailed" in this case. *See ACLU*, 240 Ariz. at 153–54, ¶¶ 37–38.

### CONCLUSION

¶47        For the foregoing reasons, we affirm in part and vacate and remand for further proceedings consistent with this opinion.

